PARKS & HULL APPLIANCE CORPORATION ET AL.
*v.* CHARLES RUDOLPH REIMSNYDER

[No. 43, October Term, 1939.]

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Edward L. Ward,* with whom was *Edwin W. Wells* on the brief, for appellants.

*J. Royall Tippett, Jr.,* and *J. Gilbert Prendergast,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

In the month of January, 1936, Charles Rudolph Reimsnyder, the appellee, was employed by the Parks & Hull Appliance Corporation, one of the appellants, as a helper in the employer's business as a distributor for Westinghouse refrigerators and electrical appliances. During the spring and summer of that year the principal work of Reimsnyder was that of delivering and installing refrigerators, and in servicing or performing general work in connection with them.

The mechanism of the refrigerant is sealed and in one unit, and in event of the failure of the unit to function, it was necessary to remove the mechanism from the

refrigerator and take it to the plant of the employer, from which point it was usually shipped to the manufacturer for overhauling and repair. At times, when a unit would break down, fumes from chemicals used as refrigerants, among them sulphur dioxide, would escape, thereby endangering the health of those inhaling these poisonous gases; and the employer, recognizing this contingency, provided gas masks for those of its employees engaged in the line of work indicated.

Reimsnyder testified that on July 7th, 1936, in company with a fellow employee, he was sent to change a unit on an old refrigerator in which one of the gas lines had been broken, and from which gas had been escaping for some time within a small basement room where the work of removing the unit was performed. At the time there was only one gas mask available, and this was used by the fellow employee, with the consent of Reimsnyder.

Testifying as to the incidents connected with the above mission, the appellee stated that during the course of the operation the fumes were so intense as to render him quite sick. It was an unusual case and caused him to go out and rest in his truck. After being in the open air a while, he felt better, and returning to the scene of his work, completed the job of removing the unit. He then testified as follows: "Q. What effect at that particular time did this sulphur dioxide gas have upon you? A. At that time I got very sick and it seemed like it clogged my breathing system, and I developed a cough, and it made me very sick. At that time it got me so badly that I couldn't hardly breathe."

The testimony of the appellee tends to show that usually the fumes due to the escape of gas were mild, and did not affect him; and he attributed the intensity of the presence of gas in the instant case to the fact that pitch, which was generally placed around the gas lines of a unit, had broken away from the lines, thereby enabling the gas to escape in greater volume.

Further testifying, the witness stated that, after the above occurrence, every time he came in contact with

the gas, a cough and irritation in his chest would develop; that the cough gradually grew worse each time, "blood started to come with his phlegm," and each time he coughed he had a sensation more or less like a cold. He continued to work with the same employer until December 9th, 1936, and his first visit to a doctor was in November of that year. On December 11th, 1936, an X-ray of the appellee's lungs was made, which showed symptoms of tuberculosis; and upon the advice of a specialist he was admited to a hospital on December 16th, for the purpose of having one of his lungs collapsed. He left the hospital on December 24th, 1936, and remained home under the care of a physician until the spring of 1937. According to the appellee, he did not discuss the matter of his claim for compensation with the agents of his employer until the spring of 1937. At that time he saw Mr. Roche, the treasurer, and Mr. Ford, the cashier, of his employer, on several occasions, "and each time I would ask them, they would either say that they would do something for me or see about it, or put it off in some other way."

"Q. Did Mr. Roche tell you to do anything about compensation? A. Well, each time—one time I would go in and he wouldn't be there and I would ask Mr. Ford, * * * and the last time I asked him what I was to do about it * * * and he said he would see what he could do about it. "The Court: Who told you that? A. Mr. Roche. * * * I would ask either Mr. Roche or Mr. Ford about compensation, and the last time I asked him about it he told me he would see what he could do, and then * * * he told me the only thing he could do would be for me to write him a letter stating my claim to him."

The appellee then testified that he complied with the above request on October 5th, 1937, and his letter appears in the record. By it, he advised his employer of his continued illness, "due to adverse working conditions" while in such employment, and expressed a desire to apply for compensation. By agreement of counsel, other correspondence was read into the record as follows:

On October 11th, 1937, Mr. Roche wrote the appellee that a letter received by him from appellee's doctor was extremely weak, and suggested that: "In view of the tone of his (the doctor's) letter, it will now be necessary for you to write us, making your claim for compensation in that way. We will then use your doctor's letter to support your claim and submit the same to our insurance attorneys." On October 23rd, 1937, Mr. Roche, as treasurer of the employer and in its name, wrote the appellee acknowledging the letter of October 5th, 1937, and stating: "Due to the fact that we have never had any complaint whatever from our employees, relative to 'adverse working conditions,' we will appreciate your being more explicit, so we may be in a position to determine the merits of your claim. In view of the fact that any claims made by you must be referred to the compensation commission, we will appreciate your making sure that all letters you send are signed, as typewritten signatures can scarcely be considered in such a matter." On October 26th, the appellee replied to the next above letter, detailed the circumstances of his illness, and expressed the request that the matter be given immediate attention because of the great need of the writer for some compensation. The latter letter was followed by a letter dated October 27th, 1937, signed by Mr. Roche as treasurer of the employer, in which the appellee was advised that all correspondence between the parties had been referred to Mr. Lucien Lowndes, a representative of the firm carrying the employer's compensation insurance. The letter concluded with the statement that the matter was then out of the employer's hands and in the hands of its insurance agents. And the record reveals, according to the testimony of the appellee, that on October 29th, 1937, he called on Mr. Wells of the insurer's firm, who filled out a statement of the claim which the appellee signed; that Mr. Wells told the appellee he would refer the claim to the insurance company and let him know in a short time later when he would hear from them; that a week or ten days later, Wells called the appellee,

told him to come to see him, and that when he did see him he was told by Wells that he was then unable to do anything with the company, but that he would see Dr. Tonolla and get his bill and the hospital bill, and call the appellee later; that a short time later Wells called him again, he went to see him, and was told he (Wells) was then unable to do anything with the insurance company but that he would try and see if they would pay part of the expenses and let the appellee know shortly thereafter. Continuing, the appellee stated that he had never heard from Wells about the matter since the last interview.

The formal application for compensation, which was filed by the appellee with the State Industrial Accident Commission on December 4th, 1937, sets forth an injury resulting from accident as of July 7th, 1936; total disability as of November 9th, 1936, extending to September 1st, 1937, said disability being due to a permanent injury to the applicant's lungs caused by inhaling sulphur dioxide during the course of his employment by the appellant. When asked the reason for the delay in filing the above application, the appellee stated that he had relied upon the representations made to him by Roche and Wells, whose suggestions he had followed.

The record is conflicting as to the date of total disability. As has been seen, it is stated in the application to be November 9th, 1936, and yet the testimony of the appellee would seem to fix the date as of December 9th, 1936,—the last date on which, he testified, he worked for the appellant.

The appellee first saw a doctor on November 17th, 1936, and was afterwards referred by that doctor to Dr. Tonolla, chief of the chest clinic of the University of Maryland, who first examined the patient on December 15th, 1936, and found that he had "a recent tuberculosis lesion that had re-action around it." He testified that the appellee gave a history of having been accidentally exposed to sulphur dioxide gas, which in the doctor's opinion "was directly the cause of the flare-up in this

tuberculosis lesion which produced the disability." He described sulphur dioxide as a markedly irritant gas, very small quantities of which would produce irritation of the bronchial tree and of the lining of the air cells in the lung, resulting practically in a burn.

Dr. Tonolla also testified that early in November, 1937, Mr. Wells came to his office, stating that he could not promise anything, but inquired, if he could get the appellee a part of his (the doctor's) bill, would the later recommend that his patient settle on that basis? This suggestion, he stated, was promptly refused; and two or three weeks later he advised the appellee to file his claim with the State Industrial Accident Commission.

The case was heard by the State Accident Commission on December 30th, 1937, upon the following issues: (1) Whether the claim was barred by reason of failure to give notice of injury within ten days after the alleged accident: (2) whether the claim was barred by reason of failure to file claim with the Commission within sixty days after the beginning of disability; (3) whether the claim filed was barred by failure to file the same within a year after the beginning of disability; and (4) whether the disability from which the claimant was suffering was occasioned by an accident arising out of and in the course of his employment. The Commission found that the claimant was not barred by reason of his failure to comply with the requirements raised by issues 1 and 2, because such failures were excused by the Commission; and that the claimant's disability was the result of an accidental injury arising out of and in the course of his employment, *Victory Sparkler & Specialty Co. v. Francks,* 147 Md. 368, 379, 128 A. 635; but that his claim had not been filed within one year after the beginning of the disability, and that such failure constituted a complete bar to the claim.

From an order of the Commission disallowing the claim, an appeal was taken to the Superior Court of Baltimore City, in which tribunal, upon appropriate issues, the jury found: (1) That the disability resulted from an acci-

dental injury arising out of and in the course of the claimant's employment; (2) that his claim was not filed within one year after the beginning of the disability; (3) that the failure to file such claim was occasioned by facts and circumstances amounting to an estoppel; and (4) that the claim was filed within one year from the time when the facts and circumstances amounting to an estoppel ceased to operate. From a judgment reversing the decision of the State Industrial Accident Commission this appeal was taken. Eleven exceptions were reserved by the appellants, ten of which relate to rulings on the evidence; the remaining exception relating to the ruling on the prayers. Of the exceptions pertaining to the first group, only the fourth and fifth, which cover the same question, were pressed in this court, and they will now be considered.

During the course of the trial, and after the appellee had fully detailed his conversations, with reference to securing compensation for his injury, with Messrs. Roche and Ford, agents of his employer, and Mr. Wells, the representative of the insurer, and also after the correspondence to which we have referred, relating to the claim for compensation, had been read into the record, the appellee was asked the following questions: "Tell us whether or not there were any facts and circumstances on which you relied, which caused you not to file your claim with the State Industrial Accident Commission before November 15th, 1937?" Objection to the question was overruled and the witness was permitted to answer. It is submitted by the appellants that the question was improper, and the contention is made that it was not for the claimant to determine in his own mind what facts and circumstances caused him not to file the claim, as he could only recite the facts and circumstances and have the jury determine whether or not they were sufficient to justify the claimant in relying thereon.

The witness had previously detailed his negotiations bearing upon the same matter of inquiry to which the question was directed, and the jury, at the time it was

asked, had before it all the facts and circumstances which tended to account for his delay in filing his claim with the Commission; the question was therefore unnecessary, and conceding that it was unnecessary, it merely elicited a reiteration of the facts previously stated by the witness, the restatement of which facts was not prejudicial to the appellants. It is therefore our conclusion that there was no reversible error in the action of the trial court in permitting the question to be asked.

The remaining exception is to the ruling of the trial court in overruling the special exceptions of the appellants to the appellee's third and fourth prayers and granting said prayers, and in refusing to grant the appellant's first, second, third, and fourth prayers. By the appellee's third prayer the jury was instructed that if they found from evidence that the claimant failed to file his claim with the Commission within one year after the beginning of his disability because the employer led him to believe that he should file his claim with the employer rather than the Commission, and further found that the claimant in reliance thereon did file his claim with the employer and not with the Commission within one year after the beginning of his disability, then the answer of the jury to the third issue should be yes.

The special exception to this prayer is predicated upon the theory that it assumes as a fact, and as true, that the employer led the claimant to believe that he should file his claim with the employer rather than with the Commission; whereas that question should have been submitted to the jury, in connection with the related fact, which the exceptant concedes was submitted to the jury, namely, whether the claimant failed to file his claim with the commission within one year after the beginning of the disability.

We do not regard the exception as being well founded, as in our opinion the prayer clearly submits the finding of both of the indicated inquiries of fact to the jury.

Secondly, the exceptant submits that the prayer is defective because there is no evidence in the case to the

effect that the employer led the claimant to believe that he should file his claim with the employer instead of the Commission, and further, that the prayer improperly segregates facts, or does not recite all the facts connected with the hypothesis that the claimant was misled by the employer, as indicated. It would hardly seem necessary to discuss the first phase of the latter objection, as it is apparent from the record that there was evidence sufficient to submit to the jury the question whether the employer led the claimant to file his claim with the employer rather than with the Commission, and that evidence, the weight of which was a jury question, was properly submitted to that body. Nor do we think that the facts were improperly segregated for the purposes of the prayer. Cases are numerous in which it has been held that a party has a right to segregate any portion of the facts from the whole, and ask an instruction upon the legal effect of such segregated portion, if the same is consistent with the truth of all other facts offered in evidence, and bears upon a question material to the issue. *Johnson v. Harvey*, 30 Md. 259; 2 *Poe, Pl. & Pr.*, sec. 301; *Baltimore, C. & A. Ry. Co. v. Trader*, 106 Md. 635, 68 A. 12.

The appellee's fourth prayer sought an instruction that if the jury found from the evidence that the employer wrote the claimant on October 11th, 1937, "it will now be necessary for you to write us, making your claim for compensation in that way"; that the claimant received the message and relied upon it; that as a result he was led to believe that the claim should be filed with the employer; that he did file the claim with the employer on October 26th, 1937, and that he did so in reliance upon the employer's message; (and if the jury find that during the months of October and November, 1936, the claimant was told to address his claim to the insurer;) and that he did take up his claim for compensation with the insurer in reliance on the employer's inducement, then they may further find that said facts constitute facts and circumstances amounting to an estoppel, and their answer to the third issue should be yes.

Substantially the same objections to the above prayer are submitted by the special exceptions thereto, as were submitted by the special exceptions to the appellee's third prayer; and what we have said with reference to the latter prayer, and the special exceptions thereto, is also applicable to the prayer now under consideration and the special exceptions to the same. In the brief of the appellants reference is made to the embodiment in the fourth prayer of the statement found therein, which in the aforegoing synopsis of the prayer we have parenthesized, and it is submitted that references to the months of October and November, 1936, are incorrect, there being no evidence in the record that during those months of the year 1936 the claimant was told to address his claim to the insurer. As, however, that objection was not set forth in the special exceptions filed to the prayer, it cannot be considered in this court. Code, art. 5, sec. 10; 2 *Poe, Pl. & Pr.,* sec. 299. We, therefore, find no error in the rulings of the trial court in overruling the special exceptions and in granting the appellee's fourth prayer.

Turning now to the four prayers offered by the appellants, all of which were refused by the trial court, it is our conclusion, (a) that the first prayer, which is a demurrer to the evidence as being legally insufficient to show that the claimant sustained an injury arising out of and in the course of his employment, was properly rejected, as in our opinion the evidence in the record on the issue raised by the prayer was legally sufficient to justify the submission of the case to the jury. But in addition to that observation, the record reveals that the Commission found that the claimant did sustain his injury arising out of and in the course of his employment, and its decision under the statute was *prima facie* correct. Code, art. 101, sec. 56, as amended by Acts 1935, ch. 545. (b) The second prayer sought an instruction that the claimant did not file his claim within one year from the beginning of disability resulting from the accident, and the jury so found. The adverse ruling on the prayer was, therefore, not prejudicial to the appellants, and will

not be further discussed. (c) The third and fourth prayers are substantially similar and will be discussed together. They submit that no legally sufficient evidence is found in the record to established an estoppel in this case, ask for an instruction accordingly, and in our opinion were properly refused.

As amended by the Act of 1935, ch. 237, section 39 of article 101 of the Code provides that an employee must file his claim within one year from the beginning of disability, by adding the following qualification: "* * * Unless it shall be established that failure to file such claim was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, in which case the claim shall be filed within one year from the time of the discovery of the fraud, or within one year from the time when the facts and circumstances amounting to [an] estoppel cease to operate, and not afterwards."

In the instant case the issue of fraud is not involved, and the solution of the question raised by the above prayers is resolved into one of estoppel.

It may be added that on this appeal we have no occasion to render a decision as to whether the respective actions of the appellants were such as to mount up to an estoppel on their part, but our duty is simply to decide whether the jury should have been given the opportunity to determine that question upon the evidence presented.

Equitable estoppel, as defined by Mr. Pomeroy in his work on *Equity Jurisprudence,* vol. 2, sec. 804, "is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity from asserting rights, which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy." And in section 812 of the same work the author says: "Whatever may be the real intention of the party making the representation, it is absolutely es-

sential that this representation, whether consisting of words, acts or silence, should be believed and relied upon as the inducement for action by the party who claims the benefit of the estoppel, and that so relying upon it and induced by it, he should take some action. The cases all agree that there can be no estoppel unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action." See *McClellan v. Kennedy,* 8 Md. 230; *Funk v. Newcomer,* 10 Md. 301; *Alexander v. Walter,* 8 Gill 239, 254; *Hardy v. Bank,* 51 Md. 562, 590; *Carmine v. Bowen,* 104 Md. 198, 64 A. 932; *Rodgers v. John,* 131 Md. 455, 102 A. 549; *East End Loan & Savings Assn. v. Berman,* 170 Md. 536, 185 A. 332.

In support of their contention, the appellants in their brief rely in great measure upon the decision of this court in *Vang Construction Co. v. Marcoccia,* 154 Md. 401, 140 A. 712, 716, wherein it was held that the doctrine of estoppel did not apply. But the facts in that case are entirely at variance with the facts in the instant case, in that in the *Vang* case, arising out of an injury resulting in the death of the claimant's decedent as of August 21st, 1921, the attorney for the mother of the deceased, after writing the State Industrial Accident Commission of his authority to represent the claimant in the premises and making inquiry of the Commission as to the proper steps to be taken in making the claim for compensation, which information was promptly furnished, did nothing more in the matter until January 6th, 1923, when he then wrote the Commission that he had investigated and found that the only dependent was the man's mother, who was a resident of Italy, and that he did not file any report with the Commission, but that the employer filed the necessary report of the death of the employee. The attorney recognized that the application for compensation was not before the Commission, since he concluded this letter with the request for a reply advising him what steps should be taken, and whether "any affidavits or petitions are necessary because of the delay

in not filing the claim at an earlier date." The Commission's reply was dated January 9th, 1923, and informed its correspondent that the employer's and physician's reports were on file, "but that no claim had been filed by the dependent of the deceased." The letter than stated that the Act required the application to be made within a year after the death, and that if the claim were then filed, it would be against the apparent intent of the Act. Not until May 14th, 1923, was a formal claim for compensation filed and notice given to the employer and the insurer. It was contended in that case that the delay in filing the claim in time was justified upon the grounds than an investigation was meanwhile being made by the insurer and the attorney for the claimant, and that the employer's right to raise the issue was waived by mutual consent; and the Commission, while finding that the claim was not filed within a year, for the reasons stated, so ruled. There was also correspondence in the case between the attorney and the claim adjuster for the insurer, beginning under date of August 30th, 1921, in which the attorney gave information of the death of the employee, his employer, the place of injury and its nature, and requested the insurer to take the matter up with the writer, if the insurer had any settlement to offer or make. In a letter of September 1st, 1921, the claim manager of the insurer advised the attorney that his letter had been referred to the writer for attention, that he had investigated, and found the death to be one that came within the jurisdiction of the Commission, that he had not com- pleted his inquiry as to who the dependents were; and further advised that "this part of the case you will have to take up personally yourself." Other informal correspondence which took place over two years after the date of the injury, between relatives of the deceased and the insurer, is found in the record in that case, but we do not deem it necessary to detail the same, further than to state that it shows that the insurer promptly replied to one letter, informing the writer that there was no settlement to be made, because it contended that there

was no dependency proven in the claim; while in another it advised that the claimant would be required to file a claim with the Commission. As was very properly observed by this court in considering the facts of that case: "No act of the insurance carrier nor of the employer is shown to have delayed the application until the statute had attached."

The reason for the observation is obvious. By a parity of reasoning, however, it would seem that an opposite conclusion must be reached in dealing with the facts in the case before us, because not only did the treasurer of the employer advise the appellee to write the employer and make his claim for compensation to it, but he also wrote the employee that: "In view of the fact that any claims made by you must be referred to the compensation commission, we will appreciate your making sure that all letters you send are signed, as typewritten signature can scarcely be considered in such a matter." That letter was written as late as October 23rd, 1937, and the concluding paragraph suggested that the writer "awaited further word" from his correspondent, the employee. Then follows the letter of October 27th, 1937, advising the employee that the employer was referring all correspondence, including copies of its letters to the claimant, to the firm which carried its compensation insurance; and finally, the negotiations of the agent of the insurer with the employee, by which the latter was lulled into a sense of security down to a period in which the defense of the statutory bar may be raised successfully, unless the provisions of the amendment to the statute can be invoked. Furthermore, the record reveals that pending negotiations with the employee on the part of the insurer, and while the agent of the latter was in possession of correspondence which indicated that the employer had assumed the obligation of filing the claim for compensation with the Commission, the said agent did nothing which by any inference could have been construed by the appellee to indicate that the obligation which the employer had voluntarily assumed, namely, that of filing a claim

on behalf of the appellee with the Commission, was not then to be carried out, although the insurance agent well knew at the time that the interest of the claimant required the filing of the claim with the Commission. To the contrary, the evidence tends to show that the agent of the insurer led the claimant to believe that at least something would be paid him, while at the same time, and as late as the early part of November, 1937, the agent of the insurer was endeavoring to influence one of the appellee's physicians to recommend a settlement of the claim upon the payment of a part of the doctor's bill. This incident was not denied by the insurer. We are not to be understood as holding the insurer or its agent as the advisor of the claimant, under ordinary circumstances, or that either of them is a guarantor against his ignorance; but inasmuch as the insurer was fully advised that the employer had voluntarily assumed the obligation of filing the claim with the Commission, it would seem that the obligation was a continuing one, vested in the agent of the insurer.

Numerous authorities from other jurisdictions have been cited by the appellants in support of a contrary contention; but as those decisions are naturally based upon the respective statutes under which they were rendered, we do not deem it necessary to prolong this opinion by discussing them. Suffice to say, the Workmen's Compensation Law of this State, though a statute in derogation of the common law, by its express terms provides that it is not to be strictly construed (Code, art. 101, sec. 63), which limitation this court has recognized in a number of cases. If, therefore, the facts and circumstances revealed by the present record are not sufficient to create an estoppel, it would seem that the amendment contemplated by the Act of 1935, as to "facts and circumstances amounting to an estoppel," is meaningless.

*Judgment affirmed, with costs.*