## GENERAL GRANT DUNSTAN *v.* BETHLEHEM STEEL CO.

[No. 61, October Term, 1946.]

*Decided February 5, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, GRASON, HENDERSON, and MARKELL, JJ.

*Paul Berman,* with whom were *Sigmund Levin* and *Theodore B. Berman,* on the brief, for the appellant.

*John G. Rouse, Jr.,* and *Sherley Ewing,* with whom were *Ewing, Rouse & Morton* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the claimant from a judgment reversing an award of the State Industrial Accident Commission for "a permanent partial disability resulting in 20% loss of use of his left leg." The only questions now presented are (1) whether the claimant filed his claim within one year after the beginning of his disability and (2), if not, whether his failure to do so was induced or occasioned by facts and circumstances amounting to an estoppel? The court directed a negative answer to the first question and the jury answered the second in the affirmative. The court granted a motion for judgment *n.o.v.* and answered the second question in the negative. The claim was filed May 17, 1945. The accident occurred September 1, 1943. The commission found

the disability began January 15, 1945. The employer's report of the accident was filed May 28, 1945.

At the trial the only evidence offered by the employer was claimant's testimony before the commission. Claimant offered no other evidence.

Claimant has been employed by employer as a laborer for about twenty years. On September 1, 1943, while unloading a box car at Sparrows Point, rolling a wheelbarrow on a plank down a scaffold, he missed his step and fell about four feet to the ground, hitting his ankle and twisting his left knee. He went to the plant dispensary, where, according to the employer's surgeon's report, his knee was X-rayed, showing no evidence of bone injury, and his leg was cleaned and dressed. He was given crutches, which he used ten or eleven days, and returned them on September 11, 1943. During September, 1943, he returned to the dispensary every few days (twelve times in all) for treatment, *viz.*, changing the bandage and rubbing with alcohol. He lost no time at work. While he was on crutches, he kept on working, stayed on the job but didn't do much work, "cleaned up shanties when he got so he could," and was paid his regular wages.

He next went to the dispensary on January 4, 1944. That day, while he was walking along Druid Hill Avenue to get a street car, his left knee gave way and he fell to the street. He was (according to the dispensary records) given crutches again, which he returned on January 19, 1944. He next went to the dispensary on January 10, 1945, and said his knee ached and pained him in bad weather, rainy weather. On January 29, 1945, he returned, and was examined and X-rayed. He returned on January 31, 1945, and thereafter not until June 19, 1945. In January, 1945, he was given an elastic knee bandage; he had to pull it off for washing, and his knee slipped again, apparently in June. Some time between September 1, 1943, and the end of 1944 he lost a few days, and was at the Johns Hopkins Hospital, on account of a nervous breakdown, not on account of his knee.

In September, 1943, he says "every time it commenced to getting bad I would be lifting heavy, straining and lifting, I could be walking along, and my knee would twist on me, and then I had to go back and get treatment for two or three days." His knee has been "giving him trouble ever since it's been sprained," "giving him trouble all along." Between September 1, 1943, and the end of 1944 his knee "bothered him steadily."

In September, 1943, and until January, 1945, he says, the doctors at the dispensary kept saying his "knee would be all right." "After they found out in January (1945) it wouldn't be all right, I insisted on them giving me an elastic bandage." In January, 1945, "I decided that I thought I should get something, and I wanted to see about it. I seed it wasn't going to be well, and it still bothers me"; "I thought it wasn't going to get any better, so I just decided—" to do something about it. In June, 1945, "I got so I could hardly walk." He went back to the dispensary and the doctor "told me to wear my elastic bandage"; he told the doctor he didn't have it on when he twisted his knee. "I can be walking along and my knee twists and I drop right down, fall on my knees." "When I got the bandage on there it hurts all the time, hurts right now, but when it is off it don't hurt, but I am afraid to walk without it, my knee would slip walking along." He did not go to any doctors outside the dispensary about his knee, except one to whom his counsel sent him for examination, not for treatment.

Nobody at the dispensary told him not to file a claim for compensation; he "didn't ask them." Asked "why didn't you file a claim before you did?" he replied, "Because it just kept giving me trouble, and I just decided I should look after it, that is all." In January, 1945, they told him his knee "would always hurt, it would keep a-bothering me. That is the reason they gave me the elastic bandage." In September, 1943, they did not tell him his knee would probably give him trouble all the time. "The only thing they did is treated it then." But it did give him trouble all the time.

Claimant in his brief says he is suffering from traumatic arthritis. There is no evidence that he is suffering from traumatic arthritis (*Baltimore Steel Co. v. Burch,* 187 Md. 209, 49 A. 2d 542) or a loose cartilage (*Travelers Ins. Co. v. Industrial Accident Commission,* 32 Cal. App. 2d 643, 90 P. 2d 327)· or something quite different in medical parlance. Whatever the nature of his injury, it has been troubling him in the same way ever since the accident on September 1, 1943, and to no greater extent now. On the contrary, his disability was apparently more severe, in September, 1943, and January, 1944 (when he was on crutches), than it has been since.

To establish either (1) "the beginning of his disability" or (2) an estoppel, he relies on the fact that in September, 1943, and in January, 1944, the doctors at the dispensary told him his knee "would be all right" and in January, 1945, told him it "wouldn't be all right." Meanwhile he knew the knee was troubling him all the time in the same way—and gave no sign that it would cease to trouble him. On the day of the accident, and certainly in January, 1944, his injury was not latent or trifling but apparent—and was apparently permanent. *Cf. New England Mutual Life Ins. Co. v. Hurst,* 174 Md. 596, 605-612, 199 A. 822. He then knew or should have known that his disability, whether permanent or temporary, was compensable. The beginning of his disability, therefore, was not later than January, 1944, and his failure to file his claim within one year thereafter is a bar. Such a prognosis by the doctors at the dispensary, if mistaken or misunderstood, would not amount to an estoppel which induced or occasioned his failure to file in time. The doctors' duty was to treat injuries and give medical advice. They were not authorized to give advice as to claims for compensation, were not asked for such advice and gave none. Nor did employer's failure to file a report of the accident (Art. 101, Sec. 37, as renumbered by Laws 1945, Ch. 528, Sec. 2) amount to an estoppel. Section 37 requires notice, "in writing or otherwise," to the employer, and requires the employer within ten days

"after the receipt of notice of such accident, [oral or written]," to report the accident and injury to the commission. If treatment of claimant's injury at the dispensary amounted to "receipt of notice" by the employer, claimant was in no way prejudiced by failure of employer to report the accident promptly. *Cf. Price v. Kansas City P. S. Co.*, 330 Mo. 706, 707, 708, 50 S. W. 2d 1047.

It is unnecessary for us to labor the reasons for our conclusions or to review the authorities. The instant case is governed by *Griffin v. Rustless Iron & Steel Co.*, 187 Md. 524, 51 A. 2d 280, just decided, and cases there cited.

Claimant contends that the commission's finding was presumptively correct, employer had the burden of proof on appeal, and the court therefore was not authorized to direct a verdict in favor of the party bearing the burden of proof. Claimant cites *Alexander v. Tingle*, 181 Md. 464, 30 A. 2d 737, and many prior cases holding that a jury may disbelieve uncontradicted evidence. This contention misinterprets and misapplies the cases cited. The provision that the commission's decision shall be *"prima facie* correct" and the burden of proof shall be upon the party attacking it (Art. 101, Sec. 57 as renumbered by Laws 1945, Ch. 528, Sec. 2) "does not mean * * * that if no facts are established before the Commission sufficient to support its decision, * * * there is any burden of factual proof on the person attacking it, for the decision of the Commission cannot itself be accepted as the equivalent of facts which do not exist, and in all cases, whether there is evidence legally sufficient to support the decision of the Commission is necessarily a matter of law to be decided by the court * * * * * * Where the facts are undisputed, and permit no inferences consistent with the existence of [an] * * * asserted right, the existence of such right, wherever it arises, whether before the Commission, the trial court, or this court, is an unmixed question of law." *Moore v. Clarke*, 171 Md. 39, 45, 46, 187 A. 887, 890, 107 A.L.R. 924. *Cf. Albright v. Pennsylvania R. Co.*, 183 Md. 421, 435, 436, 37 A. 2d 870. The Albright case involved a question

of jurisdiction, but the duty of the court to decide questions of law, when the facts are undisputed, and the permissible inferences indisputable, is not limited to jurisdictional questions but extends to all jury cases (including workmen's compensation cases) and also to review, by mandamus or otherwise, of decisions of administrative bodies. *Heaps v. Cobb,* 185 Md. 374, 45 A. 2d 73, 76, 79.

In *Alexander v. Tingle, supra,* the duty of the court in this respect was recognized, but the court distinguished between (a) uncontradicted evidence which a jury might disbelieve and (b) uncontroverted or undisputed facts, which present only a question of law. In the latter class of cases, the court may direct a verdict for a plaintiff (*Dickson & Tweeddale v. Fowler,* 114 Md. 344, 79 A. 519; *Frey & Son, Inc., v. Magness,* 161 Md. 375, 382, 157 A. 400; *Hercules Powder Co. v. Harry J. Campbell Sons Co.,* 156 Md. 346, 367-368, 144 A. 510, 62 A.L.R. 1497) or a defendant bearing the burden of proof of contributory negligence. *National Hauling Contractors Co. v. Baltimore Transit Co.,* 185 Md. 161, 44 A. 2d 450, 452, and cases cited. In some of the many cases involving this distinction (including *Alexander v. Tingle*) it may be difficult to reconcile the application of the principle to the facts, but the principle is beyond question.

In the instant case the only evidence is claimant's own testimony. As his testimony shows his claim is barred, it was the duty of the court so to instruct the jury.

*Judgment affirmed, with costs.*