WEBB ET AL. *v.* JOHNSON

[No. 186, October Term, 1949.]

*Decided June 9, 1950.*

590

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Frederick W. C. Webb* and *John W. T. Webb*, with whom were *Webb, Bounds, Travers & Adkins*, and *Edward D. E. Rollins* on the brief, for appellants.

*W. Hyland Van Sant* and *Omar D. Crothers, Jr.*, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Dorsey G. Webb, trading as Eastern Shore Air Service, and American Casualty Company, appellants, from a judgment reversing a decision of the State Industrial Accident Commission denying compensation on a claim filed by Robert K. Johnson, employee, appellee here.

Two issues were submitted to the jury. The first issue was: "Did Robert K. Johnson delay filing his claim for compensation in this case until after August 25, 1947, because of conduct on the part of Dorsey G. Webb or American Casualty Company which induced him not to file said claim on or prior to August 25, 1947?" To which issue the jury answered: "Yes." The second issue submitted was: "Did the injury sustained by Robert K. Johnson in the accident described in this case arise out of and in the course of his employment by Dorsey G. Webb trading as Eastern Shore Air Service?" To which issue the jury answered: "Yes." At the conclusion of the evidence the appellants moved for a directed verdict on the grounds, among others, that there was no legally sufficient evidence to sustain the issues submitted to the jury. The appellants further contended that under

the evidence most favorable to him, the appellee was barred from compensation by his engagement in an unlawful act at the time and place of the accident, and by his wilful misconduct at that time and place. It was further contended that there was no legally sufficient evidence that the failure of the appellee to file his claim within one year from the beginning of his disability "was induced or occasioned, (a) by fraud or (b) by facts and circumstances amounting to an estoppel". Action on this motion was withheld until after the verdict of the jury.

The appellants, after the verdict, filed a motion for judgment n. o. v. on the grounds set out in the motion for a directed verdict, and a motion for confirmation of the decision of the Commission. From the overruling of that motion by the trial judge and the entry of a judgment reversing the decision of the Commission, the appellants appeal.

For the purposes of this case this Court must assume as true the testimony most favorable to the appellee. It was recently said in the case of *Spencer v. Chesapeake Paperboard Company,* 186 Md. 522, at page 526, 47 A. 2d 385, at page 387: "The trial judge, in determining whether a verdict should be directed in favor of the employer on such an appeal, must assume the truth of the evidence presented by the claimant. *Bethlehem Steel Co. v. De Mario,* 164 Md. 272, 277, 164 A. 748." We will therefore review the evidence accordingly.

The appellant, Webb, in 1946 owned and operated an airport and airplanes in Talbot County, Maryland. The appellee was employed by Webb as a mechanic at the airport early in 1946. In addition to doing mechanical work he cleaned the planes and solicited passengers to fly for hire. Webb and John Dennis, the manager and chief pilot, were both licensed as commercial pilots. As part of his wages the appellee was given the right by Webb to use his planes without cost for one hour a week in order to learn to fly. He was also given the privilege of using any plane at one-half the regular price. He also

ferried planes from other fields. On August 4, 1946, appellee obtained a Federal "Private Pilot's License" which allowed him to fly a plane alone and to take up a passenger as his guest or "on a share the cost basis". He testified that he never took anyone up on the "share the cost basis". The license did not permit him to take up passengers for hire. It was a criminal offense for him to do so. Code 1947 Supplement; Article 1A, Section 17. Code 1939, Art. 1A, Section 22. Prosecution for this misdemeanor is barred after one year. Code 1939, Article 57, Section 11.

The appellee reported for work on Sunday morning, August 25, 1946. After doing his usual work he was instructed by Webb to take up two passengers, which he did. The money was paid to Webb for these rides. About four o'clock that afternoon four boys drove up to the airport and appellee solicited them for a ride. He discussed with them the cost and was told they would advise him later. He quoted them a price of $2.50 for the larger plane, and $2.00 for the smaller one. He went through the crowd to his automobile where his then fiancee, now wife, and sister then were and talked to them. At that time Webb called to him and said: "Bob, I got a hop for you". This is corroborated by appellee's wife and sister. The prospective passenger, Higgins, one of the four boys previously solicited by the appellee, came toward him from the office. Mr. Webb then told appellee he had a passenger to take up in the larger plane, the PT 19. Johnson and Higgins secured their helmets, got in the plane, and fastened their safety belts. Dennis cranked the plane. They started from the airport and after flying a short distance, the plane suddenly crashed, severely injuring the appellee and Higgins, the passenger. Higgins testified at the trial that he was to pay $2.50 for the flight. He further testified that appellee said nothing to him "about going up on a share the ride basis, share the cost basis".

Appellee did not file his claim for compensation until November 10, 1947, approximately fifteen months after

the accident. He had a fractured ankle, fractured skull, and a bladder injury which required an operation. He was in a cast for eight months. Appellee testified that while he was in the hospital Webb and Dennis "talked to me about the accident and what I would get out of it to take care of the hospital expenses and all, and they assured me then not to worry about it, that they was working out a settlement with the insurance company * * *. * * * I was asking him who was going to take care of the hospital bills and, of course, I knew they were going to amount to a good bit, and he told me he had insurance and he was working out a settlement with them, for me not to worry about it, the main thing for me was to get well, and I let it go at that." After he was discharged from the hospital and on crutches Mr. Webb "assured me then that I would be taken care of and I had nothing to worry about." After he received hospital and doctor's bills, he went to see Webb and appellee testified that "each time he (Webb) would assure me he was working out a settlement with the insurance company, that I would be taken care of, I had nothing to worry about." Mrs. Johnson testified that Webb assured her and Mr. Johnson, "that he would take care of matters, that he had nothing to worry about". Webb testified: "Well, when the accident first occurred, I was sure that I was covered by insurance, for I had insurance on the airplanes, liability and property damage and passenger insurance on the airplanes, and I also have the workmen's compensation insurance, so I was sure that I was covered on one part or the other, so I told him I was sure that he would get paid from the insurance company for his injuries, so later the insurance company says on this flight he was on his own. It wasn't in line of his duties and work." Webb said that he believed Johnson knew he had workmen's compensation when he came to work for him. Six months after the accident the insurance company notified Webb that they denied the compensation claim. Johnson said that Webb never informed him of this. About fifteen

months after the accident, appellee's sister-in-law told him that he ought to write to the Commission and find out about his claim. The Commission then sent him the notification form to be signed. Johnson filled this out and returned it and was notified that, as he had not signed the application within a year, his claim was denied. Webb never told Johnson that it was necessary for him to file a claim for compensation and Johnson did not know of this requirement or of its consequences. There is nothing here to show that Johnson knew that limitations barred prosecution for the criminal offense after one year.

On November 20, 1946, an insurance adjuster went to see the appellee and secured from him a signed certified statement in which appellee said, among other things, that at the time of the accident he had taken the Higgins boy up on "the share the ride basis and nothing was paid or to be paid to Webb". At the trial of the case, when he said he told and swore to an untruth in his statement to the insurance adjuster, appellee testified: "Well, I had been instructed by Mr. Webb and Mr. Dennis prior to that that if I didn't tell them that I had taken him up on a share the ride basis that they could prosecute me for operating out of my license and that if the boy should die they could hold me for manslaughter." The appellee's wife testified that at the hospital the morning Johnson was operated upon, Webb and Dennis were discussing the statement Johnson "could give to the insurance company". Johnson was not present at that time. She said she was seated between Webb and Dennis and the conversation between these two men was to the effect that Johnson should tell the insurance company: "That he (Johnson) took Herman Higgins as share and share the ride".

We must assume, therefore, in deciding the questions before us, that the appellant, Webb, instructed the appellee Johnson to take Higgins up in the plane for the price of $2.50. Webb was sure that he was covered by insurance as he had workmen's compensation insurance

in addition to other insurance. Webb believed that Johnson knew he had workmen's compensation insurance. He told Johnson he was sure that he would get paid from the insurance company for his injuries and for the hospital expenses and doctor's bills "and all" and that he would take care of matters. Webb told Johnson, on more than one occasion, that he was working out a settlement with the insurance company, for Johnson not to worry about it and he would be taken care of, and the main thing for Johnson to do "was to get well". He made these assurances to Johnson as late as fifteen months after the accident, although the insurance company had denied the claim nine months previously. Webb never told Johnson of the consequences of not filing the claim. Johnson did not know until after his sister-in-law told him, fifteen months after the accident happened, to write to the Commission and he was so advised, that it was too late to file the claim. The untrue statement that Johnson made to the insurance company, that he took Higgins up on a share the ride basis, was made on instructions from Webb and Dennis.

Code 1947 supplement, Article 101, Section 38, bars the filing of a claim for workmen's compensation after one year from the beginning of disability, "unless it shall be established that failure to file such claim was induced or occasioned by fraud or by facts and circumstances amounting to estoppel * * *". It was said in the case of *Parks & Hull Appliance Corporation v. Reimsnyder,* 177 Md. 280, at page 292, 9 A. 2d 648, at page 654: "Equitable estoppel, as defined by Mr. Pomeroy in his work on *Equity Jurisprudence,* vol. 2, sec. 804, 'is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity from asserting rights, which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires

some corresponding right, either of property, of contract or of remedy.' "

In *Griffin v. Rustless Iron & Steel Co.*, 187 Md. 524, 51 A. 2d 280, 282, the employee sustained an eye injury in the course of his employment. He was continuously treated by employer's doctor. A statement was made by the plant safety engineer in the presence of employer's doctor that "we are going to look after you". This Court held that the employer was not estopped in asserting claim of limitations because the statement made by the plant engineer related only to medical attention and not to financial care. In the case at bar the employer himself talked to appellee about the accident and told him that he would take care of matters and he was sure that Johnson would get paid by the insurance company for his injuries and for the hospital expenses and doctor's bills and "all" and he would be taken care of. He assured him they were working out a settlement with the insurance company.

In *Dunston v. Bethlehem Steel Co.*, 187 Md. 571, 51 A. 2d 288, 290, where it was held estoppel did not apply, the doctor at employer's dispensary, had told the claimant that his knee "would be all right". That case is quite different from the one now before us. In *West Virginia Pulp & Paper Co. v. Morton*, 185 Md. 623, 45 A. 2d 725, 726, the injured carpenter knew that the employer maintained an official to whom the workmen reported claims for injuries received in the course of employment. The superintendent of the department in which the claimant worked told him: "They would take care of my claim and take care of that if any claim was to be filed." This Court held in that case that the superintendent did not have authority to bind the employer. In the case at bar the statements to the employee were made by the employer himself.

In *Parks & Hull Appliance Corporation v. Reimsnyder, supra*, the evidence was held sufficient to justify submission of the question of employer's estoppel to the jury where it was testified that the employer misled the

claimant into the belief that his compensation claim should be filed with the employer rather than with the Commission.

In *Harrison v. McCarty,* 178 Md. 377, 13 A. 2d 544, the claimant broke his arm in the course of his employment and was taken by his employer to a doctor's office and then to a hospital and was told by his employer to do whatever the doctor at the hospital told him to do. The next day the claimant went again to the first doctor's office, where the employer was present, but not the doctor. The doctor's secretary filled in a report and the employer told the claimant that "everything was fixed up as far as his part was concerned", and that a report would be made by him, as he did in all accidents. This Court held in that case that "the employer is estopped to raise the issue of limitations and this estoppel will be imputed to the insurer, which appears here resisting this claim." This case is remarkably similar to the one at bar.

It was aptly said by Judge Mitchell in *Parks & Hull Appliance Corporation v. Reimsnyder, supra,* 177 Md. at page 292, 9 A. 2d at page 654: "It may be added that on this appeal we have no occasion to render a decision as to whether the respective actions of the appellants were such as to mount up to an estoppel on their part, but our duty is simply to decide whether the jury should have been given the opportunity to determine that question upon the evidence presented." In the case at bar the jury could certainly at least have legally inferred from the evidence before them that Webb's promises were such as to and did lull Johnson in the belief that Webb would take care of all matters relating to the compensation claim and consequently that Webb, for his own profit, and for that of his insurer, could not take advantage of those promises to the detriment of the claimant. *Hardy v. Chesapeake Bank,* 51 Md. 562, 589, 590, 34 Am. Rep. 325; *Turnbull v. Home Fire Ins. Co.,* 83 Md. 312, 322, 34 A. 875.

The appellants further contend that because the appellee made the untrue statement to the insurance adjuster he cannot invoke estoppel to save him from the consequences of delay in filing his claim. With this contention we do not agree. They rely heavily on the recent case of *Messick v. Smith,* 193 Md. 659, 69 A. 2d 478, 481. In that case a builder sought to enforce a mechanic's lien. Previously, in order to get the material necessary to build the house against which the lien was placed, both the builder and the owner of the house made a false statement to a government agency in violation of the United States Criminal Code, 18 U. S. C. A. § 1001. In that case it was held: "A builder who sues to enforce a mechanics' lien or foreclose a mortgage is not barred because he beats his wife or in some unrelated matter has cheated the Government out of taxes. But when the plaintiff and defendant have participated in fraudulent or illegal conduct, contrary to law or public policy or in fraud of the law itself, and are in *pari delicto,* plaintiff cannot maintain suit—at law or in equity—directly arising out of the misconduct." The untrue statement in the instant case was not the cause of action in this case. At most it was an extrajudicial falsehood regarding the cause of action. A suit cannot be said to "arise out of" any and every extrajudicial falsehood regarding it. If claimant would not necessarily be barred by a falsehood of his own, defendant's instigation of the falsehood would not make claimant's position worse or defendant's better. There is nothing to show that appellee understood that the making of this untrue statement would deny him compensation. To hold with appellants' view, all an employer would be required to do to avoid compensation payments would be to recommend to an employee, ignorant of the requirements of the workmen's compensation law as in the instant case, to give the insurance company an untrue statement in relation to his claim, and when that untrue statement was made both the employer and the insurer would be relieved from all compensation payments. Of course, the Legislature

did not intend any such exception from the Act. If they had, it could easily have been inserted therein.

The appellants claim that by appellee engaging in the unlawful act of flying a passenger for hire without the proper license, he is barred from compensation. Code 1947 Supplement, Article 101, Section 14, providing for workmen's compensation for an accidental "personal injury sustained by the employee arising out of and in the course of his employment", provides for compensation "without regard to fault as a cause of such injury, except where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty". There appears to be nothing in the compensation statutes to bar an employee from recovery because he violates a statute. If the Legislature had so intended, it would have been easy to put such an exception in the Act. We must assume from the evidence that flying without the proper license was done at the instructions of the employer.

In *Wood v. Snyder*, 83 Ind. App. 31, 147 N. E. 314, a workmen's compensation case, the Court said: "Appellees * * * insist that the simple fact that appellant was injured while driving the truck for hire without having a chauffeur's license bars compensation, irrespective of whether the injury was due to or caused by reason of, the failure to obtain such license. We cannot concur with this contention. Neither the finding nor the evidence shows that the failure of appellant to have a chauffeur's license had anything to do with causing the injury. In other words, the injury was neither due to nor caused by a misdemeanor." *Kimball's Case,* 132 Me. 193, 168 A. 871; *Anti Mite Engineering Co. v. Peerman,* 113 Ind. App. 280, 46 N. E. 2d 262; *Hayes Freight Lines v. Martin,* Ind. App., 84 N. E. 2d 205. Likewise, in the instant case there is no evidence that the lack of the required license had anything to do with this accident. As pointed out by the trial judge, there is nothing here

to show what caused the accident. The appellee had the right to fly a plane, and even to carry a passenger, provided it was not done for hire. There is nothing here to show that paying for the ride caused the accident. As we find no error the judgment will be affirmed.

*Judgment affirmed, with costs.*