## PATAPSCO & BACK RIVERS RAILROAD CO. *v.* DAVIS

[No. 2, October Term, 1955.]

*Decided November 4, 1955.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*David R. Owen,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellant.

*Hyman B. Rubenstein,* with whom were *Rubenstein & Rubenstein* and *Marvin B. Steinberg* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment reversing the action of the State Industrial Accident Commission, (the Commission), and awarding Workmen's Compensation.

Although the injury occurred on August 5, 1950, and appellee did not return to work until February 19, 1951, he did not file his claim until January 31, 1952. Code, 1951, Article 101, Section 38, bars the filing of a claim for Workmen's Compensation after one year from the beginning of disability, "unless it shall be established that failure to file such claim was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, in which case the claim shall be filed within one year from the time of the discovery of the fraud, or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate,

and not afterwards." The Commission found that the appellee sustained an accidental personal injury arising out of and in the course of his employment on August 5, 1950, but further found that he failed to file his claim within one year after the injury and, therefore, disallowed it. On appeal the jury reversed the Commission and found that the appellee filed his claim within one year after the beginning of his disability.

Without approving the form in which the issue was submitted, the question for our decision is whether there was sufficient evidence to present to the jury the question of whether the employer, appellant, was estopped to make the defense that the employee, appellee, had failed to file his claim within one year after the beginning of his disability. Of course, the trial judge and this Court, in deciding whether there was sufficient evidence to submit the case to the jury, must assume as true the testimony most favorable to the appellee and neither we nor the trial judge can say whether the actions of the appellant were such as to amount to an estoppel on its part. Our duty and that of the trial judge is merely to decide whether there was sufficient evidence for the jury to have the opportunity to determine that question. *Webb v. Johnson*, 195 Md. 587, 74 A. 2d 7, and cases there cited.

Jack Davis, appellee, an illiterate colored laborer, forty-one years of age, who never attended school, on August 5, 1950, injured his back while working as a track man in the Maintenance of Way Department of Patapsco and Back Rivers Railroad Company, appellant. He promptly reported the accident to his foreman who sent him to the Department's field office. There, the clerk filled out Form 186 which described the accident as follows: "This man claims that while working in Central District, his foot went into a hole causing him to stumble and wrench his back. At the time injury occurred this man was turning around to get a tool." A copy of the form was put in the Department's files. The original was taken by Davis to the plant dispensary and seen by Mr. Harrison, the

Superintendent of the Department, the next morning. At the dispensary appellee was given a heat treatment and sent home. Also at the dispensary a Certificate of Disability was filled out by the plant doctor, which stated: "Jack Davis, Employment Number 1058, who was sick ~~injured~~ on 8/5/50, 8:45 A. M. is unable to continue his regular employment and has been sent to residence ~~hospital.~~" The plant doctor did not explain why he made this statement in the Certificate of Disability. He did not testify that Davis so explained the injury to him. A copy of this Certificate was sent to Mr. Harrison, who had Form 186 in his possession at the time.

Davis returned to the dispensary the following week and the doctor told him to see his family physician. He followed this instruction and was advised to go to the hospital. He then went to the Johns Hopkins where he was told he had a ruptured disc, needed an operation, and should not return to work. He was treated at the Hopkins for two months before being operated on in December, 1950. He did not return to work until February 19, 1951. His medical treatments were paid for under appellant's "Social Insurance Plan". During all of this period he received $38.00 per week under this "Plan". The application for these payments and for the payment of the medical expenses were evidently made out by an employee of the appellant and signed by Davis, who could barely write his name. In the application for Social Insurance the description of the accident stated that he "stooped to pick up a wrench and got a catch or pain in back." In addition to the claim for medical expenses and Social Insurance benefits, an employee of appellant gave Davis a form to be filled out for Railroad Retirement benefits. Someone filled out this form for Davis which stated "that thing caught me in the back." Davis then received a letter from the Railroad Retirement Board asking for details. As stated in appellant's brief: "On November 7, 1950, that Board wrote to the State Industrial Accident Commission inquiring whether the Claimant was receiving Workmen's Compensation.

This was received by the Commission on November 8. On the same day it replied in the negative. Copies of the reply were sent to the Employer and to the Claimant. With the latter copy the Commission enclosed a Workmen's Compensation claim form, and added * * *" a postscript advising Davis that if he had received an accidental injury he should fill out the form which was enclosed.

As a result of these letters, on November 9, 1950, Davis met in Mr. Harrison's office with Mr. Harrison, Mr. Riley, who was responsible for Workmen's Compensation matters for the appellant, and Mr. Beres and Mr. Hiteshew, who were not further identified in the record, and a stenotypist. At the meeting Davis stated that while stooping to get a wrench something caught him in the back but he did not fall. Appellant, in its brief, admits that Davis at the meeting did not seem to understand the difference between Social Insurance, which he had been receiving, Railroad Retirement benefits, and Workmen's Compensation. Mr. Harrison admitted that the meeting was called because Davis stated that he had not received any payment "for this so-called or alleged injury." He also stated that he took the precaution of having a stenotypist present in order that he would not be open to any criticism. Mr. Harrison had seen Form 186 in which Davis had stated that he received an accidental injury. He admitted that at the time of the meeting he knew how claimant had reported the accident on Form 186 and stated that he did not mention that form at the meeting because of the later report made by the plant doctor. At the same meeting Mr. Hiteshew, in the presence of Mr. Riley, asked the appellee whether he had told the Railroad Retirement Board that he "had been receiving compensation from the company, but not now." To which Davis answered: "Yes." Mr. Hiteshew also asked Davis whether he wanted him to get papers and help him answer the letter, to which Davis answered: "Sure." Mr. Hiteshew said to Davis, in the presence of Mr. Riley: "In other words, you are getting

nothing and if we can help you get something every little bit helps. Do you agree with me?", to which Davis answered: "I agree." The appellee testified that the reason he did not file his claim sooner was because he thought the letter which appellant's representative prepared for him was a claim for Workmen's Compensation.

On four other occasions previous to the accident of August 5, 1950, the appellee had sustained accidental injuries while working for the appellant. Three of them were for injuries to his back and the other for an injury to his foot. All of these claims were prepared for him by the appellant, his employer, and he signed the forms. Also, in 1952 a claim was filed against his employer for injury to his thumb, he stating that it was incurred while working. He later admitted that his thumb was injured while "horseplaying" in the locker room.

Equitable estoppel, as the term is used in the Compensation Act and adopted by this Court in the Workmen's Compensation cases of *Parks & Hull Appliance Corp. v. Reimsnyder,* 177 Md. 280, 292-293, 9 A. 2d 648; *West Virginia Pulp & Paper Co. v. Morton,* 185 Md. 623, 45 A. 2d 725; and *Webb v. Johnson, supra,* "is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity from asserting rights, which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy." *Pomeroy's Equity Jurisprudence* (5th Ed.), Vol. 3, Sec. 804. Of course, as stated in *Appliance Corp. v. Reimsnyder, supra:* " 'Whatever may be the real intention of the party making the representation, it is absolutely essential that this representation, whether consisting of words, acts or silence, should be believed and relied upon as the inducement for action by the party who claims the benefit of the estoppel, and that so relying upon it and induced by it, he should take some action.

The cases all agree that there can be no estoppel unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action.' " *Pomeroy's Equity Jurisprudence* (5th Ed.), Vol. 3, Section 812.

In *West Va. Pulp & Paper Co. v. Morton supra,* an assurance was given to the employee by his superintendent that his claim would be taken care of. However, that employee knew that another man at the plant had the duty of making out compensation claims. This Court held that the representation made by the superintendent did not amount to an estoppel, because the superintendent had no real or apparent authority to bind the employer by this representation. In *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 51 A. 2d 280, we held that the statement of the plant safety engineer to the employee that "we are going to look after you" did not constitute an estoppel but that statement referred only to medical care because the engineer had no authority to bind the employer in Workmen's Compensation matters. In *Dunston v. Bethlehem Steel Co.,* 187 Md. 571, 51 A. 2d 288, we held that the doctor's assurance that claimant's knee "would be all right" did not constitute an estoppel, as the doctor was not authorized to give advice on claims for Workmen's Compensation and gave no such advice. *In Bethlehem-Sparrows Point Shipyard v. Glass,* 188 Md. 501, 53 A. 2d 405, this Court held that the representations made by a person working in the employer's dispensary did not bind the employer. In *Champness v. Glenn L. Martin Co.,* 193 Md. 188, 66 A. 2d 396, the claim adjuster, who took a statement from the claimant, told him "he would put in the claim" and that he need not worry as everything would be taken care of. The employee did not see the claim agent again and made no inquiry for nearly three years. This Court held that an estoppel did not exist as the claimant knew that claims for Compensation were filed at the employer's plant hospital and on a prior occasion, while at the hospital, the claimant had refused to sign the claim and did not file

it until three years after the accident. In *Mutual, Etc. Co. v. Pinckney*, 205 Md. 107, 106 A. 2d 488, where the employee claimed he was told by the first aid man or a doctor that he would be all right in about a year, we held that estoppel did not exist.

In *Appliance Co. v. Reimsnyder, supra,* where the treasurer and cashier of the employer persuaded the claimant not to file a claim and stated that they would do something for him and misled him about the necessity of filing the claim with the Commission, this Court held that an estoppel existed. In *Harrison v. McCarty,* 178 Md. 377, 13 A. 2d 544, the employer at the doctor's office told the employee that "everything was fixed up as far as his part was concerned" and further told the claimant to carry out the doctor's orders. As instructed by the doctor claimant waited for a year to determine the extent of his liability. It was there held that an estoppel existed. In *Webb v. Johnson, supra,* the employer told the claimant that he would take care of all matters and was sure the insurance company would pay for his injuries and medical expenses and "all" would be taken care of as the employer was working out a settlement with the insurance company. This Court there held that this constituted an estoppel. In *Summit Timber Prod. Co. v. McKenzie,* 203 Md. 41, 97 A. 2d 910, the employee reported his accident to the superintendent of the employer, who was engaged in cutting timber in a wood tract. There was no one else to whom the employee could report his accident. The superintendent told the claimant that he would take care of everything. We there held that an estoppel existed. In that case, in which we cited the cases herein referred to, this Court said: "From these cases it may be concluded that facts and circumstances to create an estoppel under this statute must be produced either by a principal or an agent who has real or apparent authority to speak for the principal in compensation claims. The mere fact that such an agent is a plant foreman or an engineer is not sufficient. He must have authority to represent the employer in the specific matter

of filing claims or he must be in a position which would reasonably create in the mind of the claimant an inference that he had such authority."

Of course, as argued by the appellant, the statute places no duty on it to file the claim for the employee. In the instant case from the evidence offered most favorable to the appellee the jury could have found that the appellant carried its own insurance and, therefore, that it had an inducement to prevent the filing of the claim for accidental injury with the Commission. Further, that there was no reason to have a conference of four people with a stenotypist present, including Mr. Riley, who handled Workmen's Compensation claims for the appellant, unless the appellant knew that the appellee, an illiterate man, had a claim for accidental injury. Mr. Harrison admitted that the meeting was called because of appellee's claim that he had not received any payments for his injury. It was also admitted by the appellant that Davis did not know the difference between Social Insurance, Railroad Retirement benefits, and Workmen's Compensation. The jury could also have concluded that, if Riley knew of the doctor's report, which was in appellant's files, he must have known of Form 186, which was also in the company files. At the meeting, at which Mr. Riley was present, a statement was made to Davis that he was getting nothing and, if appellant could help him get something else, it would help. There was direct testimony from the appellee that he thought the letter which appellant's representative prepared for him was a claim for Workmen's Compensation. Mr. Harrison admitted that Form 186 was in the company files and that it may have been brought out in the meeting but he did not remember whether it was or not. When Harrison was asked why he did not produce the form at the meeting at which Mr. Riley was present and why he did not ask Davis whether he did or did not have an accident, he answered: "I don't know." The jury could further have found that in appellee's statements made subsequent to the filing of Form 186 about how the injury occurred,

that Davis unintentionally left out the statement that his foot went into a hole, causing him to stumble and wrench his back. The statement in Form 186 was made immediately after the accident. The jury had before it a man who could not read or write other than the crude signing of his name. They could have concluded that Davis was justified in his belief, when he was told at the meeting of November 9th, in the presence of Mr. Riley, that he would be helped, that the help consisted of the filing of his claim for Workmen's Compensation, which the appellant had done for him on four previous occasions. He had been led down the right path by the appellant on the four previous occasions and the jury could have found that he was justified in believing that he was being led down the same path again. If the appellee had been able to read the letters and forms which he received and signed, our decision in this case might well be different.

In the charge to the jury the trial judge stated that the appellee claimed there was estoppel or fraud in the case and had made allegations of fraud. We see no error in the court's statement as to the claim made by the appellee. He certainly claimed that the meeting of November 9th was not held for his benefit. The appellant also objects to the fact that the trial judge, in his charge, used the phrase "an authorized representative of the employer." It is not denied that Mr. Riley, who was present at the meeting on November 9th, was the authorized representative of appellant to handle Workmen's Compensation matters. The appellant objects to the court instructing the jury that the Commission found that the claimant had suffered an accident on August 5th. From appellant's argument in this Court and from its brief, the only question before the jury was whether the appellee had filed his claim within the statutory period. Appellant finally objects to the court's refusal to submit to the jury the question of whether appellant's representative reasonably relied upon what the claimant told them at the meeting on November 9th when he re-

peatedly described a non-compensable injury. As previously stated, Form 186 was in the company files and the jury could have found that it was reasonable to suppose that Riley was familiar with those files. The court did instruct the jury that they could take into consideration the question as to whether the appellant was aware that the claimant had sustained an accidental injury.

For the reasons herein stated we are of opinion that there was sufficient evidence for the trial judge to submit the issue to the jury. Finding no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion.

In all of the compensation cases heretofore decided by this Court, in which a claimant has successfully avoided the bar of limitations by invoking the estoppel clause of the Compensation Act, there has been an affirmative representation on the part of the employer, reasonably calculated to mislead the claimant into thinking that a claim for compensation would be filed for him. I cannot find any evidence of such a representation in the instant case.

It is true that there is no explanation as to just why the plant doctor filled out a certificate of disability describing a non-accidental injury, when the original report referred to an accident. Presumably the doctor's statement was based on what the claimant told him. There were, of course, two mutually exclusive funds established by the employer against which claims might be made, depending upon the nature of the injury, and it may be that the illiterate claimant did not know the difference. But in any event at the time of the conference on November 9, 1950, of which a stenographic transcript was taken, the claimant had received a letter from the Railroad Retirement Board stating, in effect, that if he were receiving workmen's compensation he was ineligible for Railroad Retirement benefits, and a letter from the State

Industrial Accident Commission stating that no compensation claim had been filed on his behalf, and enclosing a form to be used if he intended to claim compensation. At the conference, the claimant denied that he had told the Retirement Board he was getting workmen's compensation on account of his present injury. In effect, he agreed that his back injury had not been due to an accident, for he did not reassert his alleged statement in the initial report, that he stepped in a hole.

The majority opinion seems to hold that the element of deception in the instant case was supplied by the offer to help the claimant answer the letter from the Railroad Retirement Board. Certainly the claimant was aware of the fact that no compensation claim had been filed up to that time. But it is equally clear that no one promised the claimant to file a compensation claim at the conference. The offer to help answer the letter from the Retirement Board, in order to get him a little bit more money, had reference to the fact that unless the Retirement Board was assured that he had not claimed, and would not claim, workmen's compensation, he would not be eligible to receive anything from that Board to supplement the non-accidental benefits he was receiving from his employer. It is true that the employer's agents had a motive to persuade him to claim sickness benefits instead of workmen's compensation, since the employer was a self-insurer as to the latter, and carried group insurance on the former. But to hold that an offer to help him get Retirement benefits can be reasonably relied on or translated into an offer to file for compensation on an inconsistent theory, seems to me to be a distortion of the facts and an unwarranted extension of the doctrine of estoppel. Even though illiterate, a claimant who has permitted the period of limitations to expire must point to some affirmative undertaking to do for him what the law requires him to do, upon which he might reasonably rely.

I think the judgment should be reversed.