[Civ. No. 1762. Fourth Appellate District.—February 4, 1936.]

CONTINENTAL CASUALTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and GEORGE GLANTZ, Respondents.

Keith & Creede for Petitioner.

Everett A. Corten and Emmet J. Seawell for Respondents.

R. P. Wisecarver, as *Amicus Curiae* on Behalf of Respondents.

MARKS, J.—George Glantz was employed as a metal worker by H. E. Jaynes & Son whose compensation insurance carrier was the petitioner. About July 21, 1932, Glantz suffered an injury to his left wrist. This injury occurred in the course of, and grew out of, his employment. Glantz thought he had sprained his wrist, had it bound with tape and continued with his work. He was not incapacitated for work for a period of seven days though he might have missed a few

days' work owing to pain in this wrist. On December 15, 1934, he suffered a second injury to the same wrist. While working on the door of an automobile it fell, cutting the flesh on the wrist to the bone. He consulted a physician and X-rays were taken which disclosed an old fracture of one of the bones of the wrist which had not united. It is admitted that this fracture occurred in the accident of July 21, 1932. It was the conclusion of examining physicians that an operation was necessary to unite the two fragments of the bone.

On February 11, 1935, Glantz filed with the Industrial Accident Commission an application for the adjustment of his claim growing out of his first injury. During the hearing on this application, and on the advice of the commission, he filed an application for adjustment of his claim growing out of the injury of December 15, 1934. Two awards were made.

The award in question in this proceeding, involving the injury of July 21, 1932, provided in part as follows: "It is ordered that applicant take no disability indemnity presently by reason of the claim asserted herein. It is ordered that defendant insurance carrier furnish to said employee such medical, surgical and hospital treatment, including nursing and medicine as may be reasonable required to cure or relieve him from the effects of his injury; together with temporary disability indemnity during such period as he may be disabled by reason of such treatment. It is ordered that the defendant employer be discharged from liability herein and dismissed herefrom."

The award in the other proceeding resulting from the accident of December 15, 1934, which is also before us for review in a case bearing our Civil Number 1763, provides in part as follows: "Award is made in favor of George Glantz against Continental Casualty Company of necessary medical treatment to relieve and cure the employee of the effects of the injury to his left wrist, and the employee is hereby awarded temporary disability indemnity for such period that he may be required to stay away from work as the result of the injury herein, less seven days waiting period."

Petitioner urges in both cases that the proceedings are barred by the provisions of section eleven of the Workmen's Compensation Insurance and Safety Act of 1917 (Stats. 1917, p. 831), as the proceedings were not instituted

within six months following the fracture of the bone. Petitioner also urges in both cases that the two awards give Glantz double compensation for the same injury. We will consider the second contention in the opinion this day filed in the case bearing the same title as the instant case and our Civil Number 1763, involving the accident of December 15, 1934 (*post,* p. 624 [54 Pac. (2d) 756]).

The commission found that Glantz had been injured on July 21, 1932, but that as a result of the injury he "has lost no time from his work". There is competent and material evidence in the record supporting this finding and we must accept it as true. It is clear that Glantz had no idea that he had a broken bone in his wrist until informed of that fact by physicians in December, 1934. He believed that his wrist had been sprained and that it was making a slowly progressive recovery.

When the limitation, imposed by the Workmen's Compensation Insurance and Safety Act of 1917, commences to run, is a question that is carefully considered and discussed in *Marsh* v. *Industrial Acc. Com.,* 217 Cal. 338, page 344 [18 Pac. (2d) 933, 86 A. L. R. 563], where it is said: " 'The law does not award compensation for mere pain or physical impairment, unless it is of such character as to raise a presumption of incapacity to earn. The object is to make amends for a disability attributable to the employment, and the test is whether there is an incapacity causing loss of earning power in whole or in part. (*Hustus' Case,* 123 Me. 428 [123 Atl. 514].) In order to be compensable, disability need not be limited to incapacity of a workman to pursue his ordinary occupation, but embraces impairment or earning power generally. (*Gordon* v. *Evans,* 1 Cal. Ind. Com. [pt. 2] 94; *Savich* v. *Industrial Com.,* 39 Ariz. 266 [5 Pac. (2d) 779].) The term "injury" then is to be understood as connoting a compensable injury, and is correlated to an incapacity or disability justifying a compensatory award. (*Dombrowski* v. *Jennings & Griffin Co.,* 103 Conn. 720 [131 Atl. 745].) Injury and compensable disability are thus more nearly synonymous expressions than are date of injury and date of accident. (*Acme Body Works* v. *Koepsel,* 204 Wis. 493 [234 N. W. 756, 236 N. W. 378].)

" 'In *De la Pena* v. *Jackson Stone Co.,* 103 Conn. 93 [130 Atl. 89], the court speaking of an occupational injury (but

with a special exception of the law of Connecticut in mind) says: "A compensable personal injury is an abnormal condition of a living body which arises out of and in the course of the employment and produces an incapacity to work for the requisite statutory period. It need not be traced to a definite happening or event. It may be caused by accident or disease, and includes diseases peculiar to an occupation except those of a 'contagious, communicable or mental nature'. The happening or event includes the entire transaction to which the injury is traced, not only the operative causes, but their effect on the body of the injured person."

" 'An injury, then, may arise out of, and in the course of, the employment when there is a causal connection between the employment and the injury; but for the purposes of compensation the injury dates from the time when the diseased condition culminates in an incapacity for work. It is at that time that the employer's liability becomes fixed; for until then the workman had received no injury in the legal sense, though the seeds productive of the injury had lodged in his frame long before. (*Johnson* v. *London Guarantee & Acc. Co.*, 217 Mass. 388 [104 N. E. 735]; *Textileather Corp.* v. *Great American Ind. Co.*, 108 N. J. L. 121 [156 Atl. 840].) When a disease is latent and progressive, it may not culminate until a considerable time after the employment has terminated. So, if the disabling result is delayed, then the injury is correspondingly delayed, and the right to compensation does not accrue until the incapacity occurs.

" 'Our Compensation Act expressly provides that it shall be liberally construed for the protection of persons injured in the course of their employment, and the purpose of such laws is to protect workmen, in proper cases, from economic insecurity. It is not surprising to find, therefore, that in those jurisdictions, where occupational diseases are compensable, it is almost universally the rule that the injury is not deemed to occur until ascertainable disability results. And it may be noted that in our own state it has been held that an employee is not to be deprived of compensation because he fails to make a correct medical diagnosis. (*Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 Pac. (2d) 142]; *Singer* v. *Industrial Acc. Com.*, 105 Cal. App. 374, 376 [287 Pac. 567].) The dependency of compensation on ascertainable disability is illustrated in a variety of cases, some being cited

in the briefs and others gathered in our own research. In Nebraska the law allows for presentation of a claim a period of six months from the occurrence of the injury. In *Selders* v. *Cornhusker Oil Co.*, 111 Neb. 300 [196 N. W. 316], the applicant, while at work in a cellar, was injured in the back by debris violently thrown against him by a flood of water. The injury was believed to be trivial at the time, and the claimant continued to perform his duties for a few weeks. Thereafter his health declined, but it was not until about nine months later that an X-ray picture disclosed the fracture of a lumbar vertebra. Application for compensation was then made and granted, the court holding that the time began to run only from discovery of his latent and previously unknown injury. A similar situation is exhibited in the recent case of *Kostron* v. *American Packing Co.*, 227 Mo. App. 34 [45 S. W. (2d) 871]. In *McGuire* v. *Phelan-Shirley Co.*, 111 Neb. 609 [197 N. W. 615], there was injury to a workman's head producing results which, though not immediately appreciable, became serious in course of time. In awarding compensation, the court spoke as follows:

" ' "Accidents frequently occur where the true nature of the injury and the resulting disability are not discernible for a considerable time even with the aid of scientific skill. When latent injuries from accidents do not at first indicate disabilities which are compensable, an employee is not necessarily deprived of compensation under the Workmen's Compensation Act, Comp. St. 1922, section 3056, for failure to demand his rights under the act before they can reasonably be ascertained. An accident resulting in an injury which proves to be progressive in its nature belongs to that class." Again in *Travelers' Ins. Co.* v. *Ohler*, 119 Neb. 121 [227 N. W. 449], an employee who received an electric shock, supposedly inconsequential, continued his work for upward of a year before he became incapacitated and had to cease; and in his case also compensation was allowed. Likewise in *City of Hastings* v. *Saunders*, 114 Neb. 475 [208 N. W. 122], the date of injury was declared to be the time of culmination in a compensatory disability.' "

When we apply these rules to the instant case we must conclude that the injury to Glantz occurred when it was discovered that he had a broken bone in his left wrist which would require an operation to cure, which would incapacitate

him from working, and would justify a compensatory award. Prior to that time he did not know the nature of his injury, had not been prevented from working for the required period, and his earning capacity had not been seriously impaired. It is true that he suffered pain and did lighter work than before July 21, 1932, but he did not suffer a compensable injury at that time as defined by the Supreme Court in the Marsh case. It follows that his application for compensation was not barred by the provisions of section eleven of the Workmen's Compensation Insurance and Safety Act of 1917.

The award in the instant case, bearing Claim Number 47004 of the Industrial Accident Commission, is affirmed.

Barnard, P. J., and Jennings, J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 2, 1936. Curtis, J., and Conrey, J., voted for a hearing.