[Civ. No. 11077. First Appellate District, Division One.—May 12, 1939.]

THE TRAVELERS INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and WALTER LINDSAY, Respondents.

R. P. Wisecarver for Petitioner.

Everett A. Corten and Eldon B. Spofford for Respondents.

WARD, J.—This is a petition for a writ of review of the findings and award rendered by the Industrial Accident Commission in favor of Walter Lindsay, one of the respondents herein.

On May 19, 1937, respondent Lindsay filed a petition with respondent commission for adjustment of a claim for injuries arising out of and in the course of his employment by Plat & Weber operating an automobile repair shop. The case was submitted before the commission but no decision was rendered until January, 1939, at which time findings and award were made in which the commission held that the injury occurred on June 26, 1936. Petitioner herein, Travelers Insurance Company, requested a rehearing, contending that the findings did not support the award and that the claim was barred by the statute of limitations. Thereafter respondent commission granted the petition for rehearing and the case was resubmitted without further evidence.

The finding that Lindsay ''while kneeling and removing an axle from a truck . . . sustained an injury to his left knee'' may not be disturbed. Competent and substantial evidence appears to support this finding. (*Tartar* v. *Industrial Acc. Com.*, 191 Cal. 703 [218 Pac. 39]; *Newton* v. *Industrial Acc. Com.*, 204 Cal. 185 [267 Pac. 542, 60 A. L. R. 1279].)

In the findings on rehearing, the commission found as follows: ''The first and only treatment was a strapping of the knee done by Dr. S. B. Van Dalsem upon instruction of the employer on February 12, 1937. It is found that the injury herein, within the connotation of that word as used in the Labor Code, occurred on date of first examination, December 7, 1936, and that the injury arose out of and occurred in the course of the employment.'' This finding is incorrect. December 7, 1936, was the date of the first examination by Dr. Lionel D. Prince. However, an examination by Dr. S. B. Van Dalsem was admittedly made prior to that date, hence could not have been on February 12, 1937. The application of Lindsay for adjustment of claim designates November 15, 1936, as the date of ''medical or surgical treatment'' rendered by Dr. S. B. Van Dalsem. During oral argument it was conceded that this last date was correct. If this is true, the claim is barred by the provisions of section 11 of the Workmen's Compensation, Insurance and Safety Act and sections 5404 and 5405 of the Labor Code. Subsequent to the accident, wages were paid, but not as compensation nor in lieu

thereof, nor was any agreement made sufficient to extend the statute.

Respondent commission contends that the facts of the case bring it within the rule of *Continental Casualty Co.* v. *Industrial Acc. Com.*, 11 Cal. App. (2d) 619 [54 Pac. (2d) 753], often referred to as the Glantz case. The claimant in that case, suffering from a wrist disability, had no idea that he had a broken bone in his wrist. He believed he had suffered a sprain and that physical recovery was near. Subsequently Glantz, in a second accident, received a cut to the bone on the same wrist. X-ray pictures disclosed a fracture. It was admitted the fracture was due to the first accident and that it required a surgical operation. In the Glantz case appears a review of decisions upon the subject of the limitation imposed by law in filing claims before the Industrial Accident Commission. "Injury", "latent injury", "compensable disability", "date of accident" and "date of injury" are subjects treated in an extended research. The conclusion is that the limitation runs from the time the exact nature of the injury is reasonably ascertained. In determining this question, the activity and conduct of the employee is worthy of great consideration.

In the instant case the accident occurred on June 26, 1936. Assuming that Lindsay could not diagnose his own physical condition or definitely determine the exact nature of the ailment, he knew that an injury had occurred from the "snap" in his knee, after which he was unable to straighten his leg. The injury was manifest and not latent. He testified: "It stayed that way five or six days and swelled up about twice its normal size and I used hot and cold compresses and I thought it was only a wrench and a couple of weeks later I happened to turn and the same thing occurred again." "Q. Did you have any trouble after that? A. Yes, in periods of two, three or four weeks it occurred again. Any particular movement did not seem to cause it; in taking a step or turning it occurred again but the operation of the catch each time would vary. Sometimes it would go back into place the same day and sometimes it would be a week." Lindsay waited five months before he visited a physician. At this examination he was told he had a "loose cartilage in the knee" and treatment was given by the method known as "strapping". More

than six months later the claim was filed with the Industrial Accident Commission. Within the statutory period Lindsay visited the second physician and the diagnosis of the two physicians were the same. The second physician recommended a surgical operation by removal of the internal semilunar cartilage, which would necessitate piercing the tissue and penetrating to the bone.

Respondent commission seeks to justify the finding that the claim was filed within six months of the occurrence of the injury upon the theory that the second examination resulted in a recommendation of surgical intervention. The second physician also disapproved the conservative method of treatment. Accordingly it is argued that Lindsay did not know until the second examination that "operative surgery" would be necessary. The answer to this contention is that on the first examination Lindsay knew or by the exercise of reasonable care and diligence should have known that the accident had resulted in a compensable injury. The statute started to run from that date. (*Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 Pac. (2d) 933, 86 A. L. R. 563].) The prescriptive date runs from the period of the culmination of the injury and not from the date the employee determines the kind or system of treatment he desires. This is not to be construed as a prohibition against an application for good cause to change the form of treatment, if the claim is filed within the statutory period.

The award is annulled.

Knight, Acting P. J., concurred.