[L.A. No. 29507. In Bank. May 14, 1968.]

FRUEHAUF CORPORATION et al., Petitioners, v. WORK-
MEN'S COMPENSATION APPEALS BOARD and
THOMAS C. STANSBURY, Respondents.

Zonni, Ginocchio & Taylor and Ralph J. Ginocchio for Petitioners.

Everett A. Corten, Edward A. Sarkisian, Rupert A. Pedrin and Willis T. Lyman for Respondents.

MOSK, J.—Petitioners, Fruehauf Corporation and its insurance carrier, seek review of a decision of the Workmen's Compensation Appeals Board (hereinafter board) awarding compensation to Thomas C. Stansbury, an employee who suffered an industrial injury arising out of and in the course of his employment by Fruehauf.

Section 5405 of the Labor Code[1] provides, with exceptions not relevant here, that proceedings for the collection of disability payments and payments for medical and hospital treatment under the workmen's compensation law must be commenced within one year from the date of injury. The term "injury" includes any injury or disease arising out of the employment. (§ 3208.) Section 5411 states, "The date of injury, except in cases of occupational disease, is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed." Section 5412 provides, "The date of injury in cases of occupational diseases is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that said disability was caused by his present or prior employment."

The perplexing question at issue here is whether a repeated series of traumas to an employee's back which are cumulative in nature and finally culminate in disability are to be classified as an occupational disease within the meaning of section 5412 or whether such an injury is covered by the provisions of section 5411.

Stansbury was employed by Fruehauf from July 21, 1962 to July 5, 1964, as an assembler. This work required him to lift weights up to 75 or 80 pounds. In September 1963 he began to experience sharp pains in his groin. He complained to his foreman, who suggested that he consult his own doctor. The doctor prescribed a rest, and in compliance Stansbury took a month off from work. He returned to his employment in November, was assigned to the same job, and began to have stiffness and soreness in the low back. The pain was located in

---

[1] All references will be to the Labor Code.

his spine and spread outward from that location. The onset of the pain was "a gradual sort of thing that was coming on." It persisted while he was at home and when he was in bed at night, as well as at work. On July 2, 1964, the pain was so acute that he felt compelled to consult another doctor to obtain relief.

Stansbury was hospitalized about a week later and remained in the hospital under traction until July 26. His condition continued to worsen, he consulted another doctor, and on the latter's recommendation an operation was performed in which three protruded lumbar intervertebral discs were removed from Stansbury's back. About October 10, after the operation, he was told by the doctor for the first time that his disability was due to the fact that his work at Fruehauf required an excessive amount of heavy lifting, twisting and stooping. Stansbury filed an application for compensation benefits on July 12, 1965, more than one year from the date of his disability, which occurred on July 2, 1964, but less than one year from the date he knew that his disability was of industrial origin. He did not work for Fruehauf after July 2, 1964.

The board found that Stansbury had sustained an industrial injury during the period between July 21, 1962, and July 5, 1964, and that his claim for benefits was not barred by section 5405 because he was suffering from an occupational disease within the meaning of section 5412. It found that he did not know and in the exercise of reasonable diligence should not have known prior to October 1964 that his disability was due to his employment and that petitioners were not prejudiced by lack of notice of the injury. If Stansbury's disability is not deemed to have resulted from an occupational disease, his application is barred under the provisions of section 5411 as not being filed within one year from the date of the "alleged incident or exposure, for the consequences of which compensation is claimed." Petitioners do not challenge the board's findings that Stansbury's injury occurred over a period of approximately two years.

The leading case on the subject of limitations applicable to workmen's compensation claims is *Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563], decided 14 years before the enactment of sections 5411 and 5412. The petitioners in *Marsh* were two widows of employees who had died as the result of silicosis and an employee who

sought disability benefits because he had contracted silicosis. At that time, a claim for workmen's compensation benefits was required to be filed within six months from the date of injury and for death benefits within one year from the date of death, except that the right to death benefits was barred unless death ensued one year from the date of injury. *Marsh* determined for the first time in this state that in the event of a latent and progressive disease, such as silicosis, it cannot reasonably be said that the injury dates from the last day of exposure to a dust-laden atmosphere and that the limitation period does not begin to run from that date; rather, the date of injury in such a case is the time when the accumulated effects of the disease culminate in a disability traceable to the latent disease as the primary cause, and it is or should be apparent by the exercise of reasonable care and diligence that the employment was the cause of the disability.

In reaching its conclusion the court in *Marsh* employed the following rationale: When a disease is of a latent and progressive character, the specific date of orgin is impossible to determine, and it is the cumulative effect of exposure which produces disability. Thus, the date of injury must refer to a period of time rather than to a point in time. Accidents frequently occur in which the true nature of the injury and the resulting disability are not readily discernible even with the benefit of scientific skill. When latent injuries from accidents do not at first indicate a disability which is compensable, an employee is not to be deprived of compensation for failure to demand his rights under the act before the disability reasonably can be ascertained. An accident resulting in an injury which proves to be progressive in nature belongs in that category. An employee is not to be deprived of compensation for his failure to make a correct medical diagnosis of his own condition. The term ''injury'' means a compensable injury or an incapacity or disability justifying the award of compensation, and it is at the time when disability occurs that the employer's liability becomes fixed and the employee has suffered an injury in a legal sense. In jurisdictions where occupational diseases are compensable, it is the universal rule that the injury is deemed to occur only when ascertainable disability is or should be manifest. This construction of the limitations provisions in the workmen's compensation law is consistent with the rules of liberal construction required in interpreting that law.

 For the purposes of discussion, we observe that compensable injuries under the workmen's compensation law generally fall into four categories: (1) specific injuries incurred as the result of one incident or exposure in the employment, the effects of which are immediately realized or realizable; (2) industrial injuries suffered as the result of a specific incident or exposure but which have latent effects; (3) continuous cumulative traumatic injuries, such as that involved here, suffered as the result of a number of minor strains over a period of time; (4) cumulative injuries, such as silicosis, resulting from continuous exposure to harmful substances.

Under the *Marsh* rule the statute of limitations began to run at the time of disability and discovery of industrial causation if the injuries suffered fell into any of the last three categories. The rule was applied whether an employee's disability resulted from a single, specific incident the effects of which were latent (e.g., *Associated Indem. Corp.* v. *Industrial Acc. Com.* (1945) 71 Cal.App.2d 820, 823 [163 P.2d 771] [hernia caused by lifting heavy timbers]; *Continental Cas. Co.* v. *Industrial Acc. Com.* (1936) 11 Cal.App.2d 619, 623 [54 P.2d 753] [broken wrist]), from continuous cumulative traumatic injuries incurred over a period of time (*Pullman Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 379, 383-384 [170 P.2d 10] [bursitis caused by repeated motions of hand and arm while sewing heavy carpets over a period of years], or from the inhalation of deleterious substances, as in *Marsh.* However, when an injury was manifest at the time it occurred, the statute of limitations ran from the date of the accident because the employee knew or should have known that the accident had resulted in a compensable injury. (*Travelers Ins. Co.* v. *Industrial Acc. Com.* (1939) 32 Cal. App.2d 643 [90 P.2d 327].)

There appear to be no definitive historical indicia of the Legislature's intention in enacting sections 5411 and 5412 in 1947.[2] A number of different interpretations of the legislative objective have been advanced. The Industrial Accident Commission has expressed the belief that the purpose underlying these sections may have been merely to codify the rule of the *Marsh* case so that section 5412 applies to all industrial injuries except injuries resulting from one specific incident or exposure whose effects and industrial connection are immedi-

---

[2]Although a legislative committee recommended in 1955 that a definition of the term ''occupational disease'' be adopted, its recommendation

ately realized or realizable. (*Layden* v. *Industrial Indem. Co.* (1959) 25 Cal.Comp. Cases 40, 45.)[3] An authority in the field of workmen's compensation law suggests that the purpose of the sections was to remove from the rule of *Marsh* all latent injuries resulting from a single incident or exposure. (See 2 Hanna, Law of Employee Injuries and Workmen's Compensation (1967) § 18.03[6], [7].)[4]

The definition of the term "occupational disease" in other states varies, and some jurisdictions, like New York, have enacted statutes listing the occupational diseases which are compensable. (See Partial Report Relating to Workmen's Compensation by the Senate Committee on Labor, pp. 93-97, vol. 2, App. to Jour. of Sen., Reg. Sess., 1955.) In New York, although disabilities resulting from a series of strains to the back or the neck are not listed among a group of specified occupational diseases, such disabilities have been judicially classified as resulting from an occupational disease. (*Mullarkey* v. *New York Hospital* (1962) 228 N.Y.S.2d 238; *Goyer* v. *Fred K. Blanchard, Inc.* (1966) 25 App.Div.2d 892 [269

---

was not enacted. The committee suggested that an occupational disease be defined as "a disease or infection which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment; . . . physical deterioration, and ordinary diseases of life to which the general public is exposed outside of the employment, shall not be compensable, except when competent medical evidence shows the physical condition or disease had its origin in a risk connected with the employment and flowed from that source as a natural consequence." (See Second Partial Report Relating to Workmen's Compensation by the Senate Committee on Labor, p. 11, vol. 2, App. to Jour. of Sen., Reg. Sess., 1955.)

[3]The *Layden* case states that sections 5411 and 5412 should be interpreted to provide that if an employee suffers a compensable injury of such insidious character that as of the date of injury or exposure he has no actual disability and neither knows nor in the exercise of reasonable diligence should know that he has suffered such an injury, the statute of limitations should run from the date on which there was a concurrence of both disability and actual or constructive knowledge of its connection with the employment. On the other hand, the commission concluded, if there is an overt injury with consequences that are immediately realized or realizable, the statute of limitations should run from the date on which the alleged incident or exposure occurred. (25 Cal. Comp. Cases at p. 46.)

[4]It has been held that a single incident of injury from operating a jackhammer or a single exposure to polio in the course of employment could not be classified as occupational diseases and that therefore the applicable statute of limitations ran from the date of injury or exposure (§ 5411) rather than from the date of disability and knowledge of the industrial character of the disability (§ 5412). (*Turudich* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 455, 457 [47 Cal.Rptr. 21]; *Johnson* v. *Industrial Acc. Com.* (1958) 157 Cal.App.2d 838, 841 [321 P.2d 856].) Both of these decisions pointed out, however, that cumulative traumas or exposures were not involved.

N.Y.S.2d 338]; *Wehling* v. *Ford Motor Co.* (1958) 7 App.Div. 2d 175 [180 N.Y.S.2d 998]; *Buchanan* v. *Bethlehem Steel Co.* (1955) 285 App.Div. 362 [137, N.Y.S.2d 204]; *De Bella* v. *Hotel Windsor* (1954) 284 App.Div. 919 [134 N.Y.S.2d 389].)[5]

■ We are convinced that it was the Legislature's intention to classify injuries resulting from continuous cumulative traumas which are minor in themselves but eventually result in disability as occupational diseases. We perceive no supportable rationale to distinguish the legal effect of such injuries from injuries that occur as a result of continuous, latent exposure to harmful substances. That in the latter situation the insidious agency is a harmful gas or dust whereas in the former it consists of the "splintering of symptoms into small pieces, the atomization of pain into minor twinges" (see *Beveridge* v. *Industrial Acc. Com.* (1959) 175 Cal.App.2d 592, 595 [346 P.2d 545]) provides no justification to apply differing rules relative to the statute of limitations. The marked similarity of these two types of injuries was recognized in *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1964) 231 Cal. App.2d 111 [41 Cal.Rptr. 628].[6]

A number of cases have held that where disability results from continuous cumulative traumas or exposures, the injury occurs not at the time of each distinct, fragmented exposure or trauma, but at the time the cumulative effect of the injuries has ripened into disability. (*Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (*Gregory*) (1952) 39 Cal.2d 831 [250 P.2d 148] [physical and mental strain over a 65-day period resulting in a stroke]; *Beveridge* v. *Industrial Acc. Com.* (1959) *supra*, 175 Cal.App.2d 592, 595 [cumulative strain of employee's work effort causing preexisting back condition to

---

[5]The New York Workmen's Compensation Law, section 3, subdivision 2, after listing a number of specified diseases, adds "Any and all occupational diseases," thus leaving discretion to the courts to add occupational diseases not contained in the listing.

[6]In the *Argonaut* case it was said, "More and more, the commission and the courts are coming to regard continuous cumulative injury as a precipitating event even though with no specific incident of work, which ultimately results in disability, in somewhat the same light as successive exposures to occupational disease which has required apportionment. As said in Hanna, *supra*, page 134, there is a great similarity between occupational disease cases and other continuous or cumulative type injury cases. In either case the workman's ultimate disability is due to continuous exposure at work to the particular situation which finally causes his physical breakdown. Moreover, in each case there is no compensable injury until the disability occurs." (231 Cal.App.2d at pp. 118-119.)

become disabling]; see *Dow Chemical Co.* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 493 [62 Cal.Rptr. 757, 432 P.2d 365].)[7]

■ It would be unreasonable to hold that although an employee who has suffered an injury resulting from several minor traumas is deemed not to be injured for the purposes of the statute of limitations until the minor traumas result in disability, once the injury has ripened into disability he is required to know immediately that such disability was caused by his employment. As *Marsh* and other authorities have held, an employee is not to be deprived of compensation merely because he fails to make a correct medical diagnosis. (217 Cal. at p. 346; *Winthrop* v. *Industrial Acc. Com.* (1931) 213 Cal. 351, 355 [2 P.2d 142].)

■ Limitations provisions in the workmen's compensation law must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in a right being lost before it accrues. (*Colonial Ins. Co.* v. *Industrial Acc. Com.* (1945) 27 Cal.2d 437, 439-440 [164 P.2d 490]; *Bianco* v. *Industrial Acc. Com.* (1944) 24 Cal.2d 584, 588 [150 P.2d 806].) To hold that an employee who has suffered an injury due to a series of latent, insidious, minor traumas is to be denied compensation even though he neither knew nor in the exercise of reasonable diligence should have known that his disability was of industrial origin would do violence to these rules and the beneficent spirit underlying the enactment of the workmen's compensation law. (§ 3202; *Jones* v. *Workmen's Comp. App. Bd.* (1968) *ante,* p. 476 [67 Cal.Rptr. 544, 439 P.2d 648].)

■ Petitioners insist that there is a significant distinction between a continuing cumulative trauma and diseases such as silicosis, which result from a gradual and insidious onset difficult for laymen and medical experts to detect. It is contended

---

[7] *Fireman's Fund* and *Beveridge* did not involve the question whether the disability resulting from a series of cumulative traumas constituted an occupational disease. This problem was neither raised nor resolved since in both cases the application for compensation was filed within one year from the date of disability. Thus, although they appear to hold that the limitation period begins to run from the date of disability in cases of cumulative injuries, they must be read in the context of the factual situations involved, i.e., the question of discovery of industrial connection at a later time was not involved and the only concern was whether the date of injury should be deemed to be the date of disability or the date of each separate trauma or exposure.

that in the continuous trauma situations an employee who is suffering back pains, for example, must know when he becomes disabled that his disability is caused by his work, since the effects of the injury are immediately noticeable. Therefore, aver petitioners, the Legislature in enacting section 5411 intended to eliminate the requirement of knowledge of industrial connection in cumulative trauma situations and to impute such knowledge to the employee. However, the merit of petitioners' contention in this regard depends entirely on the nature of the injury involved and not to its classification as a latent traumatic injury as opposed to a latent injury resulting from the inhalation of harmful substances. Thus, conceivably an employee who has worked for many years under circumstances requiring him to inhale obviously harmful substances may be better able to realize the industrial connection of his disability than, for example, one who suffers a progressive strain of his back or neck which produces only minor twinges of pain over a period of years, which symptoms are not confined to working hours. It seems clear that the Legislature had no hard and fast rule in mind relative to application of a presumption of knowledge of employment connection.[8]

Finally, petitioners assert that even if Stansbury's disability is an occupational disease within the meaning of section 5412, his claim for compensation was filed too late because the evidence established that he knew before October 1964 that his disability was connected with his employment. Petitioners rely on testimony by Stansbury to the effect that he "felt at times that the work seemed to be aggravating" his condition. On the other hand, Stansbury testified that the first time he knew of any relationship between his work and his disability was in October 1964, and this testimony is corroborated by evidence to the effect that prior to filing a demand for compensation he had made a claim for medical benefits under a group insurance plan which covered only nonindustrial diseases. Clearly, there was substantial evidence

---

[8]Petitioners point out correctly that the board has in some cases taken a position inconsistent with the contentions it makes in the present case and has held that continuous trauma is not an occupational disease. (See, e.g., *Jenkins* v. *Industrial Acc. Com.* (1964) 29 Cal. Comp. Cases 126.) On the other hand, it appears to have consistently held that hearing loss due to the trauma resulting from excessive noise is an occupational disease. (*Sunshine Biscuit Co.* v. *Liberty Mut. Ins. Co.* (1962) 27 Cal. Comp. Cases 45; *Halyaman* v. *American Brakeshoe Co.* (1959) 24 Cal. Comp. Cases 232.)

to support the board's conclusion that Stansbury did not know and in the exercise of reasonable diligence should not have known prior to October 1964 that his disability was due to his employment.

The award is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.