[L. A. No. 29697. In Bank. Jan. 22, 1970.]

SAMUEL PLOTNICK, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
SEARS, ROEBUCK AND COMPANY, Respondents.

**COUNSEL**

Mestad & Sanborn and John B. Mestad for Petitioner.

Everett A. Corten, Rupert A. Pedrin, Nathan Mudge and Sheldon M. Ziff for Respondents.

**OPINION**

**MOSK, J.**—On December 26, 1967, petitioner filed an application with the Workmen's Compensation Appeals Board (hereinafter the Board) alleging that he suffered an industrial injury to his right leg because of continuing trauma thereto during his employment between November 30, 1957, and October 26, 1966.[1] The Board found that petitioner incurred an injury

---

[1] Petitioner's application incorrectly alleged the dates during which he suffered injury as November 1, 1958, and October 16, 1967, but this was later changed by stipulation to the dates set forth above.

in October 1966, but that his claim was barred by subdivision (a) of section 5405 of the Labor Code[2] because he did not apply for benefits within one year from the date of injury. It found also that the claim was not timely filed under subdivision (c) of section 5405, which permits the filing of a claim for benefits within one year from the time the employer furnished medical treatment to the employee.[3] The sole question we are called upon to consider is whether there was substantial evidence to support the latter conclusion.

In order to comprehend the problem before us it is necessary to discuss an injury suffered by petitioner prior to that asserted in this proceeding. On January 14, 1956, he was injured when some heavy bundles of wood fell upon him in the course of his employment. He incurred a spiral fracture of the right femur and was required to undergo a series of operations, during which a pin was inserted into the femur. On December 30, 1958, an award in his favor was made by the Industrial Accident Commission (now the Board), which found an 11¾ percent permanent disability. An award was also made for further medical treatment.

Petitioner returned to work on November 30, 1957, the date when the injury involved in the present claim commenced. His duties as a freight claims clerk required him to inspect and handle damaged merchandise during approximately half of his working day. He lifted the merchandise from its container, inspected it, returned it to the box, and placed it in a storage bin. The boxes often weighed 50 to 70 pounds. At least once a day he was required to climb a ladder to place a box in a section of the storage bin higher than he could reach, and he would bring the box down the ladder when an inspector wished to examine the contents. He was also required to walk a distance of 250 to 300 feet three or four times a day in order to use a copying machine. The other aspect of petitioner's duties involved working at his desk or getting up from the desk to obtain files or to assist other employees in obtaining information.

After petitioner's return to his employment in 1957 he suffered increasing pain in his leg, hip and spine. The pains in his leg increased because of the walking required by his duties. His leg would freeze up and his back would ache when he was seated for a long period of time. In October 1966 his doctor advised him to stop working because he was suffering from dizzy spells, fainting, and blackouts, and he retired from

---

[2]All references will be to the Labor Code.

[3]Section 5405 provides in part, "The period within which may be commenced proceedings for the collection of [medical or disability payments] . . . is one year from: (a) the date of injury; or . . . (c) the date of last furnishing of any [payments for medical or hospital treatment]."

his employment in that month. His leg was more painful in 1966 than it had been when he returned to work in 1957.

Petitioner was receiving medical treatment during this entire period. Some of these treatments were for serious physical disabilities unrelated to industrial causes. Other treatment was provided by the employer because of petitioner's problems with his right leg, right hip, and back caused by injury suffered in his employment. Petitioner contends that, in view of such treatments, which continued into 1967, his claim for benefits filed in December 1967 was timely filed under subdivision (c) of section 5405.

The medical reports introduced in evidence indicate that although the fracture of the femur had healed petitioner complained of increasing pain in his right leg, hip and back. In 1961 an operation was performed to remove the pin inserted in his right femur shortly after the 1956 injury and in May 1966 some loose fragments of bone were surgically removed from the femur. Petitioner's right leg gradually reduced until it was three-fourths of an inch shorter than his left leg, and he developed a slight limp. The shortening of the leg caused a muscle spasm which contributed to severe headaches and blackouts. At least one doctor attributed some of petitioner's complaints of pain in his leg, hip and back to an industrial injury he incurred between the time he returned to work after the 1956 injury and the time he stopped working in 1966.

The Board found that petitioner suffered disability and therefore injury in October 1966 (see *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 576-577 [68 Cal.Rptr. 164, 440 P.2d 236]) but that his claim was barred because he did not file his application for benefits until December 1967, more than one year from the date of injury. It found also that, although the employer had furnished petitioner with medical treatment within one year of the time he applied for benefits for the 1966 injury, "this treatment, was not for the injury alleged, it was for the 1956 injury."[4]

█ The finding that the treatment afforded to petitioner by the employer between 1957 and 1966 was not for the injury he had incurred during that period cannot be sustained. It is true, of course, that such treatments related to the same portions of the body as those affected by the 1956 injury and may in part have also had as their purpose to relieve petitioner from the effects of the original injury. However, the application in the present proceeding alleged a distinct injury to petitioner's leg result-

---

[4]There is no claim by any of the parties in this proceeding that the Board's finding that petitioner suffered an injury in 1966 is unsupported by substantial evidence. It is not necessary, therefore, to refer to various conflicts in the evidence regarding this question.

ing from his work between 1957 and 1966 and petitioner introduced evidence to support this claim. The Board found that he had in fact suffered disability on the latter date and this conclusion was based upon evidence that in his employment between 1957 and 1966 he injured his leg and related portions of his body. It follows inevitably that any treatment received during that time from the employer must to some extent have been designed to relieve him from the effects of the injury incurred in the 1957-1966 period.[5]

The decision of the Board is annulled, and the cause is remanded to the Board for further proceedings consistent with the views expressed herein.

Traynor, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the order of the Workmen's Compensation Appeals Board.

---

[5]The Board did not find that the 1956 injury was solely responsible for petitioner's disability 10 years later. If petitioner had not returned to work in 1957 and if he had not introduced evidence that his duties between 1957 and 1966 caused certain injuries, then it would have followed that any medical treatment he received from his employer was to relieve him from the effect of the 1956 injury. However, this was not the case.