124 Cal.App.3d 176 (1981)
176 Cal. Rptr. 920
ZENITH INSURANCE COMPANY, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and DOROTHY THWEATT, Respondents.
Docket No. 25606.
Court of Appeals of California, Fourth District, Division Two.
October 1, 1981.
*178 COUNSEL
Chernow & Lieb and Alex S. Chernow for Petitioner.
Banks, Leviton, Kelley, Drass & Kelsey and Seth J. Kelsey for Respondents.
OPINION
TAMURA, J.
Petitioner Zenith Insurance Company (Zenith), a workers' compensation carrier, seeks review and annulment of a Workers' Compensation Appeals Board decision awarding full death benefits, medical benefits, and burial expenses to the widow of an employee who died of work-induced congestive heart failure. Zenith maintains that 50 percent of the contributing cause of death was a cumulative heart injury sustained by the employee during an earlier period of employment and that therefore the board should have permitted the widow to recover only 50 percent of the death and other benefits from its insured.
In Pacific Gas & Elec. Co. v. Ind. Acc. Com. (1961) 56 Cal.2d 219 [14 Cal. Rptr. 548, 363 P.2d 596], our Supreme Court held that the Legislature made no provision for apportionment of death benefits and that absent express legislative direction, such benefits are not apportionable. *179 Zenith contends that Labor Code section 3208.2 which was added in 1968 nullified the Pacific Gas & Elec. decision and mandates apportionment of the death and other benefits awarded in this case.[1] The section provides in pertinent part that when "death results from the combined effects of two or more injuries... all questions of fact and law shall be separately determined with respect to each such injury, including ... the apportionment between such injuries of liability for ... any death benefit." (1a) For reasons stated below, we hold that the high court's decision has not been abrogated by section 3208.2 and that under our workers' compensation law, death benefits, medical benefits and burial expenses are not apportionable.
The pertinent facts are not in dispute. From July 1963 to July 1967, the decedent was employed by D.N., Inc. In July 1967, while so employed decedent suffered a myocardial infarction necessitating hospitalization for two weeks. He suffered a second attack in 1968 while employed by an insurance company. In 1970 or 1971 he underwent coronary artery bypass surgery. About a month after the surgery decedent was able to resume most of his normal activities. In May or June 1976, he was employed by Grove Gunite Corporation (Grove) in a management capacity. In August 1976, he was again hospitalized for two or three weeks because of his heart condition. In November 1977, he suffered a major attack while on his way to a bank to arrange financing for Grove. Between December 1977 and January 1978, he worked for a few hours a day but after January he ceased working.
In February 1978, the employee filed two separate applications for workers' compensation benefits for cumulative injuries to his heart, one for the period of employment with Grove and the other for the period of employment with D.N., Inc. Following a consolidated hearing on the applications, the judge issued findings and award in the Grove case in which he apportioned 50 percent of the employee's permanent disability to the cumulative heart injury suffered during his employment with Grove. In the D.N., Inc. case, the judge decided he lacked jurisdiction to award benefits because more than five years had elapsed from the date of the injury to the filing of the application. On the employee's petition for reconsideration in the D.N., Inc. case, the board remanded the matter to the trial judge for further proceedings and findings on the *180 statute of limitations issue, particularly as to whether the claim was barred under section 5412 because applicant knew or should have known at the time of his 1967 heart attack that it may have been industrially caused.[2] Before further proceedings could be had in the D.N., Inc. matter, the employee died. His widow then amended the Grove application to one for death benefits and settled the D.N., Inc. case by a compromise and release agreement.[3]
At the hearing on the application for death benefits, Grove's compensation carrier argued that section 3208.2 required apportionment of 50 percent of the death benefits to the cumulative heart injury sustained by decedent during his employment with D.N., Inc. so that the award against Grove should be for only 50 percent of the benefits. The judge denied the requested apportionment and awarded the widow (the sole dependent) full death benefits of $50,000, reimbursement of medical expenses in the sum of $6,782.92 and burial expenses of $1,500. The board granted the carriers' petition for reconsideration but in its opinion on reconsideration ruled that section 3208.2 did not require apportionment and affirmed the award after reducing the burial expenses to $1,000, the maximum then allowable.[4] First, the board noted that section 3208.2 has been held to operate prospectively only so that an injury occurring before its operative date (Jan. 1, 1969) may be merged into a later cumulative injury. The board added, however, that even if the statute applied and foreclosed the merger, under the Pacific Gas & Elec. decision, an employer is liable for full death benefits upon a showing that the industrial injury hastened or contributed to the employee's death and the benefits are not apportionable by reason of any predisposing or other contributing cause.
Zenith contends that when death results from the combined effects of two or more injuries, section 3208.2 required apportionment of death benefits, costs of medical treatment and burial expenses, so that on the basis of the findings made in the employee's disability applications, *181 Grove should have been liable to the widow for only 50 percent of the benefits awarded.

I

THE PACIFIC GAS & ELEC. DECISION
In Pacific Gas & Elec. Co. v. Ind. Acc. Com., supra, 56 Cal.2d, 219, the commission had awarded full death benefits to the employee's dependents based on a finding that death was the result of a work-related back injury combined with a nonindustrial cancer. The employer contended that when an industrial injury combines with a preexisting disease to cause death, section 4663 requires apportionment of death benefits in the proportion that each factor contributes to the death.[5]
In holding that death benefits were not apportionable, the court pointed out that section 4663 and sections 4750-4755 relating to payments from the Subsequent Injury Fund deal with apportionment of compensation for disability and that the Legislature had made no provision for apportionment of death benefits payable to dependents. The court viewed the absence of such provisions as reflecting a legislative choice to make death benefits nonapportionable. The court referred to the fact that in cases of total dependency, the Legislature provided for death benefits in fixed amounts without regard to the employee's earnings and stated that it must be assumed "that the Legislature has determined that it is socially desirable to make a reasonably adequate provision for such dependents in every case of industrially caused death without regard to other considerations." (56 Cal.2d 222-223.) The court turned aside the employer's argument that it was unfair to require it to pay full death benefits where a preexisting disease is a contributing factor, saying: "It is inherent in this system that the statutory recovery, whatever it may be, shall be allowed in every case to which the statute makes it applicable, and apparent hardship in individual cases to either employer, employee or dependents (unless expressly provided for by the statute) must be disregarded in view of the social desirability of the system as a whole." (Id., at p. 223.)
*182 Thus, unless the Pacific Gas & Elec. decision has been voided by section 3208.2, death benefits are not apportionable.

II

THE 1968 ANTI-MERGER LEGISLATION
Section 3208.1, section 3208.2, and an amendment to section 5303 were enacted in 1968 as a legislative package known as the anti-merger legislation which was designed to deal with the judicially evolved doctrine of merger of specific injuries into cumulative trauma injuries. (Stats. 1968, First Ex. Sess., ch. 4, p. 31, operative Jan. 1, 1969.)
The concept of cumulative trauma injury had been judicially developed long before it was given legislative recognition and attention for the first time in 1968. (See Fruehauf Corp. v. Workmen's Comp. App. Bd. (1968) 68 Cal.2d 569, 574 [68 Cal. Rptr. 164, 440 P.2d 236]; Fireman's Fund Indem. Co. v. Ind. Acc. Com. (1952) 39 Cal.2d 831, 834 [250 P.2d 148]; Beveridge v. Industrial Acc. Com. (1959) 175 Cal. App.2d 592, 595 [346 P.2d 545]; see Swezey, Repetitive Trauma As Industrial Injury in California (1970) 21 Hastings L.J. 631.) Under the decisional law extant before the operative date of the anti-merger legislation, a cumulative injury could arise out of an employment period during which the employee may have suffered separate specific incidents which occasioned need for medical treatment or resulted in time lost from work. (Dow Chemical Co. v. Workmen's Comp. App. Bd. (1967) 67 Cal.2d 483, 493 [62 Cal. Rptr. 757, 432 P.2d 365].) In such circumstances, it was held that even though a portion of the employee's ultimate disability was shown to have been caused by specific injuries within an employment period otherwise barred by the statute of limitations, the employee was nevertheless entitled to full recovery on the theory that the specific injuries merged with the ultimate cumulative injury. (DeLuna v. Workmen's Comp. App. Bd. (1968) 258 Cal. App.2d 199 [65 Cal. Rptr. 421]; Miller v. Workmen's Comp. App. Bd. (1968) 258 Cal. App.2d 490 [65 Cal. Rptr. 835]. See State Comp. Ins. Fund v. Workmen's Comp. App. Bd. (1969) 1 Cal. App.3d 812, 817-818 [82 Cal. Rptr. 102]; Gallentine v. Livingston-Graham, Inc. (en banc) 34 Cal.Comp. Cases 326; Burris v. So. Cal. Rapid Transit Dist. (en banc) 33 Cal.Comp.Cases 419, 422-423; Swezey, supra, 21 Hastings L.J. 631, 639-642.) In addition, an injury resulting from continuous cumulative trauma which was minor in itself but eventually resulted in disability *183 was held to come within the classification of "occupational disease" for the purpose of the statute of limitations prescribed by section 5412.[6] (Fruehauf Corp. v. Workmen's Comp. App. Bd., supra, 68 Cal.2d 569, 577-578.)
In 1968 the Legislature responded to the above decisions, particularly DeLuna and Miller, by enacting the anti-merger package. (Swezey, supra, pp. 640-641.) Section 3208.1 defines "specific injury" and "cumulative injury." It defines a cumulative injury as one "occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment" and when enacted provided that "the date of cumulative injury shall be the date of disability caused thereby."[7] Section 3208.2 provides: "When disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit." Finally, section 5303, as amended, provides: "There is but one cause of action for each injury coming within the provisions of this division. All claims brought for medical expenses, disability payments, death benefits, burial expense, liens, or any other matter arising out of such injury may, in the discretion of the appeals board, be joined in the same proceeding at any time; provided, however, that no injury, whether specific or cumulative, shall for any purpose whatsoever, merge into or form a part of another injury; nor shall any award based on a cumulative injury include disability caused by any specific injury or by any other cumulative injury causing or contributing to the existing disability, need for medical treatment or death."
The legislative committee comment pertaining to the foregoing legislation reads in pertinent part: "To nullify the effect upon the law of Workmen's Compensation of certain recent decisions of the Court of Appeal and of the Supreme Court, including Dow Chemical Co. vs. *184 Workmen's Compensation Appeals Board, 67 AC 488, DeLuna vs. Workmen's Compensation Appeals Board, 258 ACA 271, Miller vs. Workmen's Compensation Appeals Board, 258 ACA 589, and Fruehauf Corporation vs. Workmen's Compensation Appeals Board, 252 ACA 600, ..." (44A West's Ann. Lab. Code, p. 46.)

III

SECTION 3208.2 DOES NOT MANDATE APPORTIONMENT OF DEATH AND OTHER BENEFITS AWARDED
(2) Zenith's contention that section 3208.2 mandates apportionment of the death and other benefits between the employee's widow and the employer stems from a misreading of the statute. Analysis of the specific language of the section, consideration of the nature of the benefits awarded, and application of the rules governing the interpretation of workers' compensation laws compel the conclusion that the benefits are nonapportionable.

A. The term "apportionment" as used in section 3208.2 refers to the sharing of loss by employers, not apportionment of benefits.

Although sections 3208.2 and 5303 have a potential effect on the substantive rights of an employee by precluding resurrection of a barred disability claim through the application of the merger doctrine, they are essentially procedural statutes directing the manner in which claims should be filed and requiring that questions of fact and law be separately determined with respect to each injury when there are multiple injuries.[8] (See State Comp. Ins. Fund v. Workmen's Comp. App. Bd., supra, 1 Cal. App.3d 812, 820; Gallentine v. Livingston-Graham, Inc., supra, 34 Cal.Comp.Cases 326, 329.) Insofar as apportionment is concerned, *185 the separate determinations of "questions of fact and law" which section 3208.2 requires to be made as to each injury pertain to "the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit." (Italics supplied.) Apportionment of a compensable loss may arise in three principal contexts: Between successive employers or carriers; between an employer and the Subsequent Injury Fund; and between an employer and the employee himself. (2 Larson, Workmen's Compensation Law, § 59.20, pp. 10-350  10-351.) In the first two situations, the employee receives full benefits and the only question is how the loss will be shared among those liable; in the third situation, apportionment reduces the amount of the award to the employee. (2 Larson, supra, pp. 10-351  10-352.) The statutory phrase "apportionment ... of liability" signifies a division of the loss among successive employers, not between an employee and the employer. That this is what the Legislature must have meant by apportionment of liability is corroborated by the fact that while the legislative committee comment to the anti-merger legislation singled out specific decisions for nullification, it made no reference to the Pacific Gas & Elec. decision or to decisions such as Royal Globe Ins. Co. v. Industrial Acc. Com. (1965) 63 Cal.2d 60 [45 Cal. Rptr. 1, 403 P.2d 129], holding temporary disability indemnity to be nonapportionable as to the employee. The failure to mention those cases indicates that the Legislature did not intend to use the word "apportionment" in a sense that would set aside those holdings. (See Wilkinson v. Workers' Comp. Appeals Bd. (1977) 19 Cal.3d 491, 501-502, fn. 5 [138 Cal. Rptr. 696, 564 P.2d 848].)
Our interpretation of section 3208.2 is shared by Mr. Hanna. He says of the use of the word "apportionment" in the section: "As used in this sense, `apportionment' means there may be a proration of the aggregate liability among (1) two or more traumatic injuries; (2) a series of exposures producing occupational disease; or (3) a series of exposures producing industrial pathology not classified as occupational disease. This type of apportionment is actually between successive employers or carriers."[9] (2 Hanna, Cal. Law of Employee Injuries and Workmens' Compensation (2d ed.) § 14.04[2], p. 14-35; italics supplied.)

*186 B. The nature of death benefits and applicable rules of statutory interpretation militate against apportionment.

In addition to the history and specific language of section 3208.2, the nature of death benefits and the applicable rules governing interpretation of workers' compensation laws militate against an interpretation that the Legislature intended such benefits to be apportioned.
Article XIV, section 4, of our Constitution mandates that a complete system of workers' compensation shall include "adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment. ..." (Cal. Const., art. XIV, § 4; italics supplied. See Bianco v. Ind. Acc. Com. (1944) 24 Cal.2d 584, 589 [150 P.2d 806].) Fulfillment of the beneficient objectives of such a system is "declared to be the social public policy of this state." (Cal. Const., art. XIV, § 4; Bartlett Hayward Co. v. Indus. Acc. Com. (1928) 203 Cal. 522, 529 [265 P.2d 195]; Pacific Indemnity Co. v. Ind. Acc. Com. (1948) 86 Cal. App.2d 726, 729 [195 P.2d 919].)
*187 (3) Pursuant to the constitutional directive the Legislature created an employer's liability for death benefits to compensate dependents where an industrial injury causes an employee's death. (§ 4701.) A dependent's right to the statutory death benefits is not derived from the rights of the deceased employee; it is a right which is "independent and severable from the employee's claim for disability compensation." (Bianco v. Ind. Acc. Com., supra, 24 Cal.2d 584, 589-590; Cowell v. Industrial Acc. Com. (1938) 11 Cal.2d 172, 178 [78 P.2d 1016]; 2 Larson, supra, § 64, pp. 11-112  11-113.) The amount of death benefits is fixed by statute and does not vary with the employee's earnings; the size of the benefits depends upon the relationship and extent of the dependency. (§ 4702.) Death benefits in all cases are required to be paid in installments "in the same manner and amounts as temporary disability indemnity, payments to be made at least twice each calendar month, unless the appeals board otherwise orders." (§ 4702, subd. (d).)
(4) Apportionment would frustrate the humanitarian purpose death benefits are intended to serve, that of relieving an employee's dependents of the financial consequences of his or her death in the course of employment. The worker's compensation system must be administered to "accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; ...." (Cal. Const., art. XIV § 4.) Apportionment could force dependents to file multiple applications for benefits, to undergo protracted and expensive hearings on complex issues of apportionment, and to be relegated to recovery of benefits on a piecemeal basis. The hardship of the delay and expense of recovering full benefits on those who depended upon the deceased employee for support is manifest. The fact that the Legislature fixed the amount of death benefits without regard to the employee's earnings and directed that they be paid "in the same manner and amount as temporary disability payments" (§ 4702, subd. (d)) indicates that it intended full benefits to be made available promptly so that they may serve as a substitute for the lost support.
(5) Workers' compensation laws must be liberally construed for the benefit and protection of persons injured in the course of their employment. (§ 3202.) "Accordingly, `[w]here provisions of [the workers' compensation] laws are susceptible of an interpretation either beneficial or detrimental to injured employees or an ambiguity appears, they must be construed favorably to the employees.'" (Department of Corrections v. Workers' Comp. Appeals Bd. (1979) 23 Cal.3d 197, 203-204 [152 Cal. Rptr. 345, 589 P.2d 853], quoting from Granado v. Workmen's *188 Comp. App. Bd. (1968) 69 Cal.2d 399, 404 [71 Cal. Rptr. 678, 445 P.2d 294]; Judson Steel Corp. v. Workers' Comp. Appeals Bd. (1978) 22 Cal.3d 658, 668 [150 Cal. Rptr. 250, 586 P.2d 564].) Those statutory and judicial canons of construction are for the benefit of dependents applying for death benefits as well as employees. (Department of Corrections v. Workers' Comp. Appeals Bd., supra, 23 Cal.3d 197, 203-204; Arndt v. Workers' Comp. Appeals Bd. (1976) 56 Cal. App.3d 139, 147 [128 Cal. Rptr. 250]; Munoz v. Workmen's Comp. Appeals Bd. (1971) 19 Cal. App.3d 144, 149 [96 Cal. Rptr. 394].) Apportionment of loss between a claimant (employee or dependent) and an employer works to the detriment of the claimant; the employer is the one who benefits from that kind of an apportionment. (See Pullman Kellog v. Workers' Comp. Appeals Bd. (1980) 26 Cal.3d 450, 456 [161 Cal. Rptr. 783, 605 P.2d 422].) Consequently any ambiguity in sections 3208.2 or 5303 must be resolved against an interpretation which would require or permit apportionment of death benefits.
In Granado v. Workmen's Comp. App. Bd., supra, 69 Cal.2d 399, our high court provided the following summary of its reasons for holding that section 4663 did not permit apportionment of temporary disability: "In view of the ambiguity of the statute, the rule of liberal construction, the delays which will necessarily result if temporary disability is made apportionable, the resulting frustration of the legislative policy of making temporary disability a substitute for lost wages, and our public policy of expeditious payment, we conclude that temporary disability is not apportionable." (Id., at p. 405.) It is for those very same reasons we hold that section 3208.2 does not require or permit death benefits to be apportioned.[10] (1b) What we have said concerning apportionment of death benefits perforce applies to burial expenses; they are nonapportionable.

C. Medical expenses are nonapportionable.

In Granado v. Workmen's Comp. App. Bd., supra, 69 Cal.2d 399, our Supreme Court held that medical expenses are clearly nonapportionable. *189 The court held that section 4663 only applied to disability compensation and that none of the sections dealing with medical or hospital treatment suggest that the employer may pay only part of such expenses. In concluding that medical expenses were nonapportionable, the court pointed to the adverse consequences which would flow from apportionment: "If medical expense reasonably necessary to relieve from the industrial injury were apportionable, a workingman, who is disabled, may not be able to pay his share of the expenses and thus forego treatment. Moreover, the uncertainties attendant to the determination of the proper apportionment might cause employers to refuse to pay their share until there has been a hearing and decision on the question of apportionment, and such delay in payment may compel the injured workingman to forego the prompt treatment to which he is entitled." (Id., at p. 406.)
Our death benefit apportionment analysis applies equally to reimbursement of medical expenses. Section 3208.2 did not nullify Granado; it merely permits liability for medical benefits to be apportioned among defendants.[11]

DISPOSITION
The decision of the Workers' Compensation Appeals Board is affirmed.
Gardner, P.J., and McDaniel, J., concurred.
Petitioner's application for a hearing by the Supreme Court was denied November 25, 1981.
NOTES
[1] Unless otherwise indicated, all section references in this opinion are to the Labor Code.
[2] Section 5412 provides: "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."
[3] The compromise and release agreement is not a part of the record before us.
[4] The amount has since been increased to $1,500. (§ 4701.)
[5] Section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."
[6] Section 5412 then read: "The date of injury in cases of occupational diseases is that date upon which the employee first suffered disability...."

The section was amended in 1973 to expressly include "cumulative injuries."
[7] Section 3208.1 was amended in 1973 to provide that "the date of a cumulative injury shall be the date determined under Section 5412."
[8] It has been held that the anti-merger legislation is non-retroactive and that the De Luna and Miller merger doctrine applies to all cumulative injuries occurring before January 1, 1969. (State Comp. Ins. Fund v. Workmen's Comp. App. Bd., supra, 1 Cal. App.3d 812, 820; Aetna Cas. & Surety Co. v. Workmen's Comp. Appeals Bd. (1973) 35 Cal. App.3d 329, 335-336 [110 Cal. Rptr. 780]; Gallentine v. Livingston-Graham, Inc., supra, 34 Cal.Comp.Cases 326, 331.) In the instant case, the board and respondent have suggested that to apportion death benefits to the cumulative injury antedating the operative date of the statute would amount to an improper retroactive application of the statute. (See City of Los Angeles v. Workers' Comp. Appeals Bd. (1978) 88 Cal. App.3d 19, 29, fn. 9 [151 P.2d 679].) Because of our determination that death benefits, medical expenses, and burial expenses are not apportionable under sections 3208.2 and 5303, we need not pass on the retroactivity issue.
[9] In his section on death benefits, Mr. Hanna states: "Prior to 1968 the workers' compensation statutes neither expressly authorized nor prohibited apportionment of death benefits, and the Supreme Court held that, in the absence of express legislative authorization, apportionment of a death benefit was improper. In 1968, however, the Legislature added Section 3208.2 to the Labor Code expressly requiring the apportionment between two or more injuries, either specific, cumulative, or both, of liability for disability benefits, the cost of medical treatment, and any death benefit." (2 Hanna, supra, § 14.04[5], pp. 14-40.7  14-40.8; italics supplied; fns. omitted.) By his reference to the Pacific Gas & Electric decision, Hanna seems to imply that section 3208.2 now permits apportionment of death benefits to a dependent. However, in light of his earlier statement concerning the sense in which the word "apportionment" is used in section 3208.2, we believe it is not unfair to interpret his statement that the section now requires apportionment "of liability for ... any death benefit" to mean apportionment of loss among employers.

Other respected commentators on the law of workers' compensation unequivocally state that death benefits are not apportionable. Mr. Herlick states: "If the employee's death is caused or hastened by an industrial injury, including industrial aggravation of a pre-existing disease or condition, the death is compensable under the workers' compensation law, and death benefits accrue to the employee's dependents. There is no apportionment of the death benefit due to any prior condition. (Labor Code Sec. 4701; P.G. & E. v. I.A.C.; Dren (1961) 56 C. 2d 219, 363 P.2d 596, 26 C.C.C. 130)" (1 Herlick, California Worker's Compensation Law Handbook (2d ed.) § 9.4, p. 311.) Mr. Henry F. O'Connell, author of the chapter on Benefits, Costs and Penalties in California Workmen's Compensation Practice (Cont.Ed.Bar 1973) expresses the same view at page 507: "The death benefit cannot be diminished or apportioned by reason of any predisposing or contributing cause when it is established that the industrial injury is a contributing cause of death. PG&E v. IAC (Blunt) (1961) 56 C2d 219, 14 CR 548, 26 CCC 130. Liability for the death benefit may be apportioned between defendants when two or more injuries contribute to the death. National Surety Corp. v. IAC (Duffy) (1965) 30 CCC 387; see Lab C § 3208.2" (Italics supplied.)
[10] In cases of occupational disease or cumulative injuries arising out of periods of successive employment, the employee may obtain an award for his entire disability from any one or more employer and the employer so held liable has the burden of instituting supplemental proceedings for purposes of apportioning liability or enforcing a right of contribution. (§ 5500.5; Flesher v. Workers' Comp. Appeals Bd. (1979) 23 Cal.3d 322, 328 [152 Cal. Rptr. 459, 590 P.2d 35].) The apportionment of liability cannot diminish, restrict, or in any way alter the employee's recovery. (See id., at p. 328.)
[11] This was the state of the decisional law before the enactment of the anti-merger legislation. (Royal Globe Ins. Co. v. Industrial Acc. Com., supra, 63 Cal.2d 60, 63.)